# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43458

| | | |
|---|---|---|
| DRUG TESTING COMPLIANCE GROUP, LLC, | ) ) ) | |
| Plaintiff-Respondent, | ) ) | Boise, September 2016 Term |
| v. | ) ) | 2016 Opinion No. 127 |
| DOT COMPLIANCE SERVICE, DAVID MINERT, JEFF MINERT and RYAN BUNNELL, | ) ) ) ) | Filed: November 3, 2016 Stephen W. Kenyon, Clerk |
| Defendants-Appellants. | ) ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

The judgment of the district court is reversed.

Hawley Troxell Ennis & Hawley, Boise, for appellants. D. John Ashby argued.

Points Law, PLLC, Boise, for respondent. Michelle R. Points argued.

_____

J. JONES, Chief Justice

DOT Compliance Service ("DOT Compliance"), Jeff Minert, David Minert, and Ryan Bunnell (collectively "Appellants") appeal a jury verdict finding that DOT Compliance and Bunnell tortiously interfered with Respondent Drug Testing Compliance Group, LLC's ("DTC Group's") customer contracts and that Jeff and David Minert violated the covenant of good faith and fair dealing by disparaging DTC Group in violation of a settlement agreement entered into by the parties. DTC Group and DOT Compliance are companies that provide drug and alcohol testing and other services to commercial drivers. Both companies obtain new business by making unsolicited phone calls to newly registered drivers. DTC Group brought this suit alleging that DOT Compliance, through its owners and employees was calling DTC Group's customers, asking them to cancel their service, and making disparaging comments about DTC Group.

1

On appeal, Appellants allege that the district court erred in denying their motion for directed verdict on the tortious interference with contract claim because DTC Group is not registered with the Idaho Attorney General as required under the Idaho Telephone Solicitation Act ("ITSA") and, as a result, any customer contracts were void ab initio. Additionally, Appellants allege that the district court erred in denying their motion for judgment notwithstanding the verdict ("JNOV") on DTC Group's breach of good faith and fair dealing claim against Jeff and Dave Minert because no evidence was presented at trial that they personally made disparaging comments about DTC Group in violation of the settlement agreement. Appellants also appeal the district court's jury instructions, the exclusion of certain evidence, and the district court's award of attorney fees to DTC Group. Appellants and DTC Group each seek attorney fees on appeal.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

DOT Compliance was founded by David and Jeff Minert in March 2011. DOT Compliance provides drug and alcohol testing and other services to commercial drivers to help drivers comply with regulations promulgated by the United States Department of Transportation ("USDOT"). DTC Group was founded by David Crossett in July 2013 and is a direct competitor of DOT Compliance. Both companies are Idaho limited liability companies with their principal place of business in Ada County, Idaho. Both companies solicit new business by obtaining information from the USDOT website about newly registered commercial drivers and making unsolicited calls to those drivers to offer testing and other services.

When Crossett founded DTC Group, two employees joined the company that previously worked at DOT Compliance and had signed non-compete agreements. DOT Compliance filed suit against DTC Group, alleging tortious interference with contract. DTC Group answered and filed counterclaims against DOT Compliance. Crossett testified that a few months into DTC Group's operation it experienced a sharp increase in cancellations and chargebacks. Crossett testified that he believed that customers were cancelling with DTC Group after receiving calls from DOT Compliance. Additionally, Crossett testified that DTC Group had been audited by the Idaho Department of Labor while the litigation was pending, due to an anonymous tip that he believed came from DOT Compliance.

2

On July 11, 2014, Jeff Minert and David Minert, on behalf of themselves and DOT Compliance, and Crossett, on behalf of himself and DTC Group, entered into a settlement agreement, agreeing to discharge and release all claims and counterclaims in the litigation.[1] As relevant to this appeal, the settlement agreement included a "no disparagement" clause, which provides:

> The Parties will not disparage each other in their communications with third parties relating to the character, reputation, profession, business, practices, operations, services, facilities, presence, plans, or conduct of another Party, and shall not cause, encourage or suggest disparaging statements to be made by a third party regarding a Party.

Appellants allege that in June 2014, while the parties were negotiating the settlement agreement, Crossett met with David and Jeff Minert and proposed that DOT Compliance and DTC Group agree not to compete for customers. David Minert spoke with an attorney about the conversation with Crossett and soon after received a call from the United States Department of Justice ("USDOJ"). The USDOJ asked David Minert to meet with Crossett to discuss the agreement and to record the conversation. David Minert agreed and testified that during a second meeting on July 10, 2014, Crossett suggested that the companies agree that whoever called a customer first would win and that the other would not try to compete. David Minert also testified that Crossett proposed that each company could then raise their prices and stated that DTC Group would be raising its prices the following week. Crossett testified at trial that he was motivated to enter into the settlement agreement in part because he believed that DOT Compliance was agreeing to not call customers and offer lower prices once the customer entered into an agreement with and paid DTC Group. The USDOJ and FBI later sent Crossett a subpoena for a grand jury investigation for violations of antitrust laws.

Crossett testified that the rate of cancellations and chargebacks at DTC Group continued to go up after the parties entered into the settlement agreement. Crossett further testified that several of the cancelling customers informed DTC Group employees that they were called by DOT Compliance and told to cancel their service with DTC Group for various reasons, such as: DTC Group was being investigated by the FBI, DTC Group was a scam, DTC Group's

---

[1] The settlement agreement shows that Jeff Minert signed the agreement on behalf of DOT Compliance, but unlike David Minert and Crossett, it does not appear that Jeff Minert signed the agreement on his own behalf. However, this issue was never raised at the district court. In fact, DOT Compliance's counsel agreed during trial that Dave Minert and Jeff Minert, as individuals, were parties to the settlement agreement.

employees stole the idea from DOT Compliance, DTC Group was not authorized to perform services in a particular state, and DTC Group provided substandard service and customers would fail safety audits if they continued to work with DTC Group.

On August 18, 2014, DTC Group filed a complaint against the Appellants, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, interference with prospective economic advantage, tortious interference with contracts, unfair competition, and civil conspiracy. DTC Group alleged that DOT Compliance was calling customers who had contracted for service with DTC Group and trying to persuade those customers to cancel their service. DTC Group also alleged that during these phone calls, DOT Compliance's employees (including Bunnell) were making disparaging comments about DTC Group in violation of the settlement agreement.

Appellants filed an answer and moved for summary judgment. In their summary judgment motion, Appellants argued that DTC Group could not prove actual injury for any of its claims because it was operating in violation of the registration requirements of the ITSA and any customer contracts entered into were void. Additionally, Appellants argued that they had not interfered with any contracts because no customer contract was enforceable until the three-day rescission period under the ITSA had passed. Appellants also argued that DTC Group failed to state a claim for unfair competition because it had not alleged a conspiracy. DTC Group filed a cross motion for summary judgment, asking the court to rule in favor of DTC Group on all claims.

On January 28, 2015, the district court heard argument on various motions including the parties' motions for summary judgment. The court granted summary judgment to Appellants on the unfair competition claim, but denied their motion as to the rest of the claims. The court concluded that the ITSA only gives consumers—not competitors—the right to void a contract made in violation of the Act and, therefore, Appellants did not have "standing" to raise the issue. The court then denied DTC Group's motion for summary judgement, finding that issues of material fact precluded summary judgment on the remaining claims.[2] DTC Group later amended its complaint to add David Minert as a defendant.

---

[2] At the summary judgment hearing, DTC Group conceded that it did not have a claim for breach of contract or breach of the covenant of good faith and fair dealing against Bunnell, a DOT Compliance employee, because he was not a party to the settlement agreement.

The case was tried from May 11 through May 15, 2015. During direct examination, Crossett testified about the July 10, 2014 conversation with David Minert and the following FBI/USDOJ investigation. DTC Group tried to elicit testimony as to costs incurred by Crossett and DTC Group as a result of the investigation. The district court excluded such testimony, concluding that DTC Group failed to disclose that it would be seeking damages related to the FBI/USDOJ investigation. During redirect examination, Crossett testified he believed that any report David Minert made to the USDOJ suggesting that DTC Group attempted to engage in price fixing was "frivolous." In response to this testimony, Appellants sought to introduce the FBI's recording of the July 10, 2014 conversation as impeachment evidence. The district court excluded the evidence, concluding that the FBI/USDOJ investigation was a collateral issue and David Minert would have an opportunity to explain his basis for reporting DTC Group during his testimony.

Appellants moved for a directed verdict at the end of DTC Group's case in chief. Appellants asked the court to dismiss DTC Group's claim for tortious interference with contract, arguing that the ITSA's three-day recession right precluded a finding that any interference by Appellants caused customers to breach a contract. Additionally, Appellants asked for a directed verdict on the breach of contract and breach of the covenant of good faith and fair dealing claims against Jeff and Dave Minert, alleging no evidence had been presented that they individually made disparaging comments to customers in violation of the settlement agreement. The district court denied Appellants' motion for directed verdict on both claims.

Appellants moved again for a directed verdict at the conclusion of trial, alleging that DTC Group did not prove a claim for tortious interference with contract because DTC Group was operating in violation of the ITSA and any contracts it entered into were void. The district court denied the motion, again stating that the ITSA did not give a competitor "standing" to void contracts made in violation of the Act. The district court, on its own motion, dismissed the claim for civil conspiracy and tortious interference with prospective economic advantage. Additionally, DTC Group agreed to dismiss the tortious interference with contract claim against Jeff and Dave Minert as individuals.

Appellants proposed several jury instructions on the ITSA. The district court ruled that it would not give instructions on the ITSA because the three-day rescission right and DTC Group's failure to register were not defenses to the interference with contract claim and such instructions

5

would confuse jurors. Appellants also objected to the court including DTC Group's proposed instruction on the elements of a tortious interference with contract claim rather than using Idaho Jury Instruction ("IDJI") 4.70.

The jury was asked to determine: (1) whether DOT Compliance, Jeff Minert, and/or David Minert breached a contract with DTC Group; (2) whether DOT Compliance, Jeff Minert, and/or David Minert breached the covenant of good faith and fair dealing; and (3) whether DOT Compliance and/or Bunnell tortiously interfered with DTC Group's contracts. The jury returned a verdict finding that DOT Compliance, Jeff Minert and David Minert breached a contract with DTC Group but that their breaches did not cause DTC Group any damages. The jury concluded that DOT Compliance, Jeff Minert, and David Minert breached the covenant of good faith and fair dealing. The jury found that Jeff Minert and David Minert, as individuals, each caused DTC Group $20,000 in damages, but DOT Compliance did not cause any damages for its breach. The jury additionally found that DOT Compliance and Bunnell tortiously interfered with DTC Group's contracts whereby DOT Compliance caused DTC Group $20,000 in damages and Bushnell caused DTC Group $500 in damages.

Appellants moved for JNOV, alleging in part that no evidence was presented to show David or Jeff Minert personally disparaged DTC Group in violation of the settlement agreement. Additionally, Appellants and DTC Group moved for an award of attorney fees. The district court heard oral argument on the parties' motions on July 15, 2015. The district court found that there was evidence in the record supporting the jury's conclusion that Jeff Minert and David Minert breached the covenant of good faith and fair dealing. The district court reasoned:

> I think in this case the jury could infer that the Minerts and thereafter their company were responsible for the calls to the [Department of Labor], the calls to the FBI, and certainly to – there was at least one tape where a jury could have found that young Mr. Minert's conversation with the customer was certainly contrary to his stated testimony as to how he talked to customers.

The district court also concluded that DTC Group was the prevailing party in the litigation and entitled to fees against DOT Compliance, Jeff Minert, and David Minert, but not against Bunnell.

On August 3, 2015, the district court entered judgment against DOT Compliance in the amount of $20,000, against Jeff Minert in the amount of $20,000, against David Minert in the amount of $20,000, and against Bunnell in the amount of $500. Additionally, the district court entered judgment against DOT Compliance, Jeff Minert, and David Minert jointly and severally for attorney fees in the amount of $87,414.14. Appellants timely appealed.

6

Appellants appeal the district court's denial of their motion for directed verdict on the tortious interference of contract claim against DOT Compliance and Bunnell and the district court's denial of their motion for JNOV on the breach of the covenant of good faith and fair dealing claim against Jeff Minert and David Minert. Additionally, Appellants challenge the district court's exclusion of the FBI recording, the court's jury instructions, and the court's award of attorney fees to DTC Group. Appellants and DTC Group each seek attorney fees on appeal. The State intervened as *amicus curiae* to address the district court's interpretation of the ITSA.

## II.
## ISSUES ON APPEAL

1. Whether the district court erred in denying Appellants' motion for directed verdict on the tortious interference with contract claim against DOT Compliance and Bunnell.

2. Whether the district court erred in denying Appellants' motion for JNOV on the breach of the covenant of good faith and fair dealing claim against Jeff and David Minert.

3. Whether the district court abused its discretion by awarding DTC Group attorney fees and denying Appellants' request for fees.

4. Whether any party is entitled to attorney fees on appeal.

## III.
## STANDARD OF REVIEW

"When reviewing a decision to grant or deny a motion for a directed verdict, this Court applies the same standard the trial court applied when originally ruling on the motion." *April Beguesse, Inc. v. Rammel*, 156 Idaho 500, 508–09, 328 P.3d 480, 488–89 (2014) (quoting *Enriquez v. Idaho Power Co.*, 152 Idaho 562, 565, 272 P.3d 534, 537 (2012)). The Court determines:

> whether there was sufficient evidence to justify submitting the claim to the jury, viewing as true all adverse evidence and drawing every legitimate inference in favor of the party opposing the motion for a directed verdict. This test does not require the evidence be uncontradicted, but only that it be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper. Where a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied.

*Id.* at 509, 328 P.3d at 489 (quoting *Enriquez*, 152 Idaho at 565, 272 P.3d at 537). The same standard is applied when reviewing a grant or denial of a motion for JNOV. *Polk v. Larrabee*, 135 Idaho 303, 311, 17 P.3d 247, 255 (2000).

7

"An award of attorney fees and costs is within the discretion of the trial court and subject to an abuse of discretion standard of review." *Smith v. Mitton*, 140 Idaho 893, 901, 104 P.3d 367, 375 (2004).

## IV.
## ANALYSIS

**A. The district court erred in denying Appellants' motion for directed verdict on the tortious interference with contract claim.**

Appellants allege that the district court erred in denying their motion for directed verdict on the tortious interference with contract claim against DOT Compliance and Bunnell because DTC Group did not register as a telephone solicitor with the Idaho Attorney General and any customer contracts entered into were void under the ITSA. Alternatively, Appellants argue that DTC Group could not establish a claim for tortious interference with contract because its customers had a three-day rescission right under the ITSA.

"Tortious interference with contract has four elements: (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach." *Bybee v. Isaac*, 145 Idaho 251, 259, 178 P.3d 616, 624 (2008). "This Court has held that a claim for tortious interference with a contract is available when a contract is voidable or unenforceable but is not available when the contract is void ab initio." *Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 551, 314 P.3d 593, 606 (2013). A voidable contract "is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." Restatement (Second) of Contracts § 7 (1981). By contrast, a void contract is "[a] promise for breach of which the law neither gives a remedy nor otherwise recognizes a duty of performance by the promisor . . . such a promise is not a contract at all; it is the 'promise' or 'agreement' that is void of legal effect." *Id.* § 7, cmt. a. As we recently stated, "void contracts are deemed never to have existed in the eyes of the law." *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 159 Idaho 813, 827, 367 P.3d 208, 222 (2016).

The issue before the Court is whether contracts entered into by DTC Group were void ab initio under the ITSA. If so, DTC Group cannot maintain a claim for tortious interference with contract because it cannot prove the existence of a contract with which DOT Compliance and

Bunnell allegedly interfered. The disposition of this issue requires us to interpret the relevant provisions of the ITSA.

> The interpretation of a statute is a question of law over which we exercise free review. This Court must construe a statute to give effect to the intent of the legislature. It must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole.

*Paolini v. Albertson's Inc*., 143 Idaho 547, 549, 149 P.3d 822, 824 (2006) (citations and internal quotation marks omitted).

The ITSA was enacted "to safeguard the public against deceit and financial hardship, to insure, foster and encourage competition and fair dealings among telephone solicitors by requiring adequate disclosure, and to prohibit representations that have the capacity, tendency, or effect of misleading a purchaser." I.C. § 48-1001(2). A telephone solicitor is "any person who, on his own behalf or through other persons or through use of an automatic dialing-announcing device, engages in a telephone solicitation." I.C. § 48-1002(12). Telephone solicitation includes "[a]ny unsolicited telephone call to a purchaser for the purpose of asking, inducing, inviting, requesting, or encouraging the purchaser to purchase or invest in goods or services during the course of a telephone call." I.C. § 48-1002(11)(a). Telephone solicitors are required to register with the Idaho Attorney General at least ten days prior to conducting business in Idaho. I.C. § 48-1004(1).

It is undisputed that DTC Group obtains customers by making unsolicited calls to newly registered commercial drivers. Additionally, it is undisputed that DTC Group does business in Idaho and that it was not registered with the Idaho Attorney General at the time it entered into the customer contracts with which DOT Compliance and Bunnell allegedly interfered.[3] From the record before us, it appears that DTC Group was operating in violation of Section 48-1004 because it was an unregistered telephone solicitor doing business in Idaho. Under the ITSA, "[i]f a telephone solicitor violates any applicable provision of this chapter, any contract of sale or purchase is null and void and unenforceable." I.C. § 48-1007(2).

The district court addressed this issue in ruling on Appellants' motion for summary judgment and Appellants' motion for directed verdict at the end of trial. The district court stated

---

[3] Idaho Code section 48-1005 exempts certain businesses from the registration requirements in section 48-1004. DTC Group did not allege at the district court or on appeal that it is exempt from registration under section 48-1005.

that the ITSA gives consumers the option to declare a contract void and unenforceable or to finish out the contract. The district court concluded that because the right to void contracts is only given to consumers, competitors such as DOT Compliance do not have standing to raise a violation of the ITSA as a defense to an interference with contract claim. Although not expressly stated, it appears the district court concluded that Section 48-1007(2) made contracts entered into by a business operating in violation of the ITSA voidable by the customer. The district court also concluded that this was not a situation where the contracts were void ab initio because all the elements of a contract were met.

The district court assumed that a contract could not be void ab initio unless an essential element of a contract was lacking. However, as stated above, a contract is void ab initio where the law provides that the promise or agreement is "void of legal effect." *See* Restatement (Second) of Contracts § 7, cmt. a. The State and Appellants argue that Section 48-1007(2)'s use of the term "void" rather than "voidable" indicates that the Legislature intended any contracts entered into by a telephone solicitor operating in violation of the Act be of no legal effect.

Where the Legislature has intended that a contract be voidable, it has expressly stated so. *See, e.g.*, I.C. § 48-608(1) ("Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by this chapter, may treat any agreement incident thereto as voidable . . ."); I.C. § 55-1819 ("Every disposition made in violation of any of the provisions of this chapter, or of any order issued by the commission under any of the provisions of this chapter, shall be voidable at the election of the purchaser."). On the other hand, the Legislature on certain occasions has expressly provided that certain actions render a contract "void." *See, e.g.*, I.C. § 54-4804(3) ("An agency contract resulting from conduct in violation of this section is void"); I.C. § 67-9213 ("All contracts made in violation of the provisions of this chapter shall be void."). Recently, we concluded that under Idaho Code section 67-5725, contracts made in violation of the State Procurement Act were void ab initio.[4] *Syringa Networks*, 159 Idaho at 828–29, 367 P.3d at 223–24. Like Section 67-5725, Section 48-1007(2) uses the term "void" rather than "voidable."

---

[4] Idaho Code section 67-5725 has since been repealed, but a similar provision can be found at Idaho Code section 67-9213.

10

On appeal, DTC Group focuses its argument on the unfairness of allowing DOT Compliance and Bunnell to avoid liability by finding DTC Group's sales contracts void under Section 48-1007(2). Additionally, DTC Group seems to allege that DOT Compliance should be estopped from asserting Section 48-1007(2) as a defense because until recently DOT Compliance was also not registered as a telephone solicitor and DOT Compliance had taken the position that the ITSA did not apply to it. These arguments have little to no relevance to the issue before the Court.

The plain language of Section 48-1007(2) provides that any contract entered into by a party operating in violation of the ITSA is "null and void." "When the statute's language is unambiguous, the legislature's clearly expressed intent must be given effect, and we do not need to go beyond the statute's plain language to consider other rules of statutory construction." *State v. Hillbroom*, 158 Idaho 789, 792, 352 P.3d 999, 1002 (2015) (quoting *State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015)). As argued by the State, the Legislature weighed the issues and policies before it and clearly and unambiguously provided that the telephone sales contracts of telephone solicitors who operate in violation of the ITSA, including those who fail to register, are null and void and unenforceable. Under the plain language of the statute, any contracts entered into with customers while DTC Group was operating in violation of the Act are void ab initio. Therefore, DTC Group cannot maintain a claim for tortious interference with contract because it cannot prove the first element of the claim—the existence of a contract.

We hold that the district court erred in denying DOT Compliance's motion for directed verdict on the tortious interference with contract claim against DOT Compliance and Bunnell. Because we hold that DTC Group's customer contracts were void under Idaho Code section 48-1007(2), we need not address Appellants' arguments relating to the three-day recession right under the ITSA.

**B. The district court erred in denying Appellants' motion for JNOV on the breach of the implied good faith and fair dealing claim against Jeff and David Minert.**

"In every contract there is an implied covenant of good faith and fair dealing, which 'requires the parties to perform, in good faith, the obligations *required by their agreement*.'" *Silicon Int'l Ore*, *LLC v. Monsanto Co.*, 155 Idaho 538, 552, 314 P.3d 593, 607 (2013). A violation of the covenant occurs when either party violates, nullifies or significantly impairs any benefit of the contract. *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 289, 824 P.2d 841, 864 (1991). "The implied covenant of good faith and fair dealing does not create

11

independent obligations, it merely applies to contractual obligations." *Silicon Int'l Ore*, 155 Idaho at 552, 314 P.3d at 607. "Thus, before a party can breach this covenant there must be a contract." *Id.* "A violation of the implied covenant is a breach of contract. It does not result in a cause of action separate from the breach of contract claims, nor does it result in separate contract damages unless such damages specifically relate to the breach of the good faith covenant." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 157 Idaho 106, 120, 334 P.3d 780, 794 (2014) (quoting *Idaho First Nat'l Bank*, 121 Idaho at 289, 824 P.2d at 864).

DTC Group's claims for breach of the implied covenant of good faith and fair dealing against DOT Compliance, Jeff Minert, and David Minert were based on alleged breaches of the non-disparagement clause in the settlement agreement. The jury was instructed that DTC Group had the burden of proving:

1. That plaintiff and the defendant entered into a contract;
2. That the defendant unfairly disparaged plaintiff to others so as to nullify or impair the benefits of the plaintiff under the contract;
3. That plaintiff is not attempting to create obligations that are new or inconsistent with the contract; and
4. The plaintiff had been damaged by the defendant's conduct; and
5. The amount of damages.

The jury was further instructed that with respect to the breach of contract and breach of the good faith covenant claims "only the principal is liable for acts by the agent if the agent is acting within the scope of authority for the principal."

The jury concluded that DOT Compliance and Jeff and David Minert as individuals breached the good faith covenant. The jury concluded that DOT Compliance did not cause DTC Group damages for its breach, but Jeff and David Minert each caused DTC Group $20,000 in damages.[5]

---

[5] The jury also concluded that DOT Compliance, Jeff Minert, and David Minert breached the settlement agreement, but that their breaches did not cause DTC Group damages. DTC Group's claim for breach of contract alleged that DOT Compliance and Jeff and David Minert breached the settlement agreement by making disparaging comments in violation of the non-disparagement clause. It appears that the breach of contract claim and the breach of the good faith covenant claim were one and the same. It is unclear why DTC Group was allowed to pursue a separate claim for breach of the good faith covenant that was merely a recitation of DTC Group's breach of contract claim. "A violation of the implied covenant is a breach of contract. It does not result in a cause of action separate from the breach of contract claims." *Saint Alphonsus Diversified Care*, 157 Idaho at 120, 334 P.3d at 794. However, it appears that DOT Compliance never requested that the breach of the good faith covenant claim be dismissed for this reason and this issue has not been raised on appeal. Further, it is unknown why the jury found the Minerts to have caused $20,000 in damages for breach of the good faith covenant when it found they had caused no damage for their breach of the contract.

In Appellants' first motion for directed verdict, they argued that the court should dismiss the claims for breach of contract and breach of the covenant of good faith and fair dealing against Jeff and David Minert because no evidence had been presented that they individually made disparaging statements in violation of the settlement agreement. DTC Group argued during the hearing that the Minerts' "false or frivolous claims to government agencies" provided sufficient evidence to avoid directed verdict on these claims. The district court denied the motion for directed verdict, concluding that Jeff and Dave Minert were liable for the claims as owners and operators of DOT Compliance. The court reasoned:

> So far as the claims against the individuals, the captains run the ship . . . Here we are talking about the persons telling people who are driving the car. The employers are responsible for the conduct of their employees. They are responsible for the conduct of the company. To the extent that the company is committing torts, it is doing it at the behest of the people running the company, or I at least I believe a jury can so find, these persons having – being the officers of the company.

After the jury returned its verdict, Appellants filed their motion for JNOV again arguing that DTC Group had presented no evidence that Jeff or David Minert personally made disparaging comments in violation of settlement agreement. In denying the motion for JNOV, the district court concluded:

> I think that, frankly, the jury came to the conclusion that Mr. – both Minerts, and by their extension their company, was not in good faith performing their obligations under that settlement agreement. . . . And I think in this case the jury could infer that the Minerts and thereafter their company were responsible for the calls to the Department of [Labor], the calls to the FBI, and certainly to – there was at least one tape where a jury could have found that young Mr. Minert's conversation with the customer was certainly contrary to his stated testimony as to how he talked to customers.

The issue before this Court is whether there was substantial evidence to support the jury's finding that Jeff and David Minert breached the covenant of good faith and fair dealing. *See Polk v. Larrabee*, 135 Idaho 303, 311, 17 P.3d 247, 255 (2000) ("When ruling on a motion for j.n.o.v. the [Court] must determine whether there is substantial evidence to support the jury's verdict."). "Where there was no objection to the jury instructions, the sufficiency of the evidence to support a verdict must be based upon the jury instructions." *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 154 Idaho 269, 275, 297 P.3d 232, 238 (2013). Here, the jury was instructed that DTC Group had the burden of proving that the Minerts "unfairly disparaged plaintiff to others so as to nullify or impair the benefits of the plaintiff under the contract." Additionally, the jury was

instructed that with respect to the good faith covenant claim, "only the principal is liable for acts by the agent if the agent is acting within the scope of authority for the principal." DTC Group argues the jury verdict was supported by (1) evidence that Jeff and David Minert made frivolous reports to government agencies, and (2) evidence that Jeff and David Minert instructed DOT Compliance employees to disparage DTC Group when speaking with prospective customers.[6]

Appellants ask the Court to rule that the breach of the covenant of good faith and fair dealing claim cannot be based on the allegation that Jeff and David Minert reported DTC Group to the Idaho Department of Labor or to the USDOJ/FBI because those events occurred before the parties entered into the settlement agreement. Appellants rely on *Prof'l Serv. Indus., Inc. v. Kimbrell*, 834 F. Supp. 1305 (D. Kan. 1993), where the United States District Court for the District of Kansas concluded that a claim for breach of the covenant of good faith and fair dealing cannot be based on conduct that occurred before the contract was formed. *Id.* at 1310. The court reasoned that, under Kansas law, "the implied covenant of good faith and fair dealing applied to the *performance* of a contract, not to its formation." *Id.* (citing *Bonanza, Inc. v. McLean*, 747 P.2d 792 (Kan. 1987)). This premise is in line with Idaho law, where "*before* a party can breach this covenant there must be a contract." *Silicon Int'l Ore*, 155 Idaho at 552, 314 P.3d at 607 (emphasis added).

DTC Group argues that Jeff and Dave Minert entered the settlement agreement in bad faith, focusing on the USDOJ/FBI price fixing investigation and the Idaho Department of Labor audit. However, it is uncontested that the parties entered into the settlement agreement on July 11, 2014, after David Minert contacted an attorney and received a call from the USDOJ and after DTC Group was audited by the Idaho Department of Labor. DTC Group has offered no authority to support the proposition that pre-formation conduct can be a basis for finding a breach of the covenant of good faith. A claim for breach of an integrated contract, including its covenant of good faith and fair dealing, cannot be based on pre-formation conduct. Indeed, the primary purpose of the settlement agreement was to "forever release and discharge" the respective parties "from any and all causes of action . . . claims, counterclaims, liabilities and demands for every

---

[6] DTC Group also alleges that the jury's verdict was supported by evidence that Jeff and David Minert destroyed telephone recordings of conversations with DTC Group customers relevant to this litigation. However, the Minerts' alleged discovery violations do not relate to the provisions of the settlement agreement. The good faith covenant applies only to contractual obligations, not a party's obligations under the rules of discovery. *See Idaho First Nat'l Bank*, 121 Idaho at 289, 824 P.2d at 864.

14

kind and character . . . as well as all matters that were or could have been raised . . . pertaining to any activities or conduct occurring before the Effective Date of this Agreement, including, but not limited to, any claims . . . for breach of the covenant of good faith and fair dealing." *See Stibal v. Fano*, 157 Idaho 428, 434, 337 P.3d 587, 593 (2014) (a release agreement discharges the parties from liability for any preexisting claims and liabilities, known or unknown, unless otherwise agreed). Therefore, Jeff and David Minert's alleged reporting of DTC Group to the Idaho Department of Labor and USDOJ/FBI could not support the jury's verdict on this claim.[7]

On appeal, DOT Compliance states that DTC Group presented some limited evidence at trial that other DOT Compliance employees (i.e. Ryan Bunnell, but not Jeff or David Minert) made statements to customers that DTC Group characterizes as disparaging and in violation of the non-disparagement clause. However, Appellants argue that Jeff and David Minert could not be held personally liable for the actions of DOT Compliance's employees. DTC Group argues that as principals of and for DOT Compliance, Dave and Jeff Minert are liable for their own actions and the actions of their agents.

At trial, DTC Group introduced several recorded telephone calls evidencing allegedly disparaging comments DOT Compliance's employees made to DTC Group customers after the parties entered into the settlement agreement. DTC Group admitted it did not have recordings of Jeff and David Minert personally making disparaging comments to DTC Group's customers.[8]

DTC Group alleges the evidence established that DOT Compliance's employees were instructed by the Minerts to make disparaging comments about DTC Group to potential customers. DTC Group relies on testimony from Colby Porter, a former DOT Compliance employee. At trial, Porter testified that he worked at DOT Compliance in January 2014 and was supervised by David Minert. Porter testified that during that time David Minert said he wanted to put DTC Group out of business and that salespersons were to try to take sales from DTC Group. DTC Group also relies on testimony from Tessa Cousins, another former DOT Compliance employee. Cousins testified that she worked for DOT Compliance for three months, ending in October 2013. Cousins testified that when she left DOT Compliance to work for DTC Group,

---

[7] Additionally, it is unclear how the jury could assess damages for the Minerts' reporting of DTC Group to the USDOJ/FBI where the district court expressly excluded any such evidence.
[8] It appears from the record that the district court was mistaken when it concluded that "there was at least one tape where a jury could have found that young Mr. Minert's conversation with the customer was certainly contrary to his stated testimony as to how he talked to customers."

15

David Minert told her she would need extra money for the lawsuit that would be filed because she violated the non-compete agreement. Cousins also testified that she saw David Minert taking pictures outside DTC Group's office. None of this testimony supports DTC Group's allegation that David and Jeff Minert instructed employees to make disparaging comments about DTC Group in violation of the settlement agreement. Additionally, all of this testimony relates to events that occurred before the settlement agreement was entered into, which is irrelevant to the breach of the good faith covenant claim.

Based on the foregoing, it appears that the only evidence presented relevant to the good faith covenant claim was that DOT Compliance's employees allegedly made disparaging comments to DTC Group's customers. We must determine whether Jeff and David Minert can be held individually liable for breach of the covenant based on the actions of DOT Compliance's employees.

DOT Compliance is an Idaho limited liability company, of which Jeff and David Minert are both members and managers. "A limited liability company is an entity distinct from its member or members." I.C. § 30-25-108(a). "A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the company solely by reason of being or acting as a member or manager." I.C. § 30-25-304(a). Generally, "[m]embers of an LLC are not liable for the misconduct of the company unless it is proven that the company is the alter ego of the member." *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho 586, 594, 329 P.3d 368, 376 (2014). Based on these principles, this Court has recently held that a managing partner of an LLC was not personally liable for a breach of the covenant of good faith and fair dealing where he signed the agreement on behalf of the LLC. *Ellmaker v. Tabor*, 160 Idaho 576, 584, 377 P.3d 390, 398 (2015). There, the Court held that the breach of the good faith claim did not apply to the manager because he was not a party to the contract. *Id.* Additionally, this Court held that a manager of an LLC could not be held liable for failing to exercise good faith in making sure an LLC paid a promissory note solely because he was a manager of the LLC. *Id.*

Unlike *Ellmaker*, Jeff and David Minert were parties to the contract at issue and, therefore, could be liable for a breach of the covenant. However, that does not mean that Jeff and David Minert would necessarily be individually liable for the actions of DOT Compliance

16

employees. This is especially true where DOT Compliance itself was found not to have caused DTC Group damages for breaching the good faith covenant.

As the jury instructions stated, as to the good faith covenant claim, only the principal can be liable for actions of an agent acting with the scope of their authority. DOT Compliance's employees are agents of DOT Compliance. Although the jury found that DOT Compliance breached the covenant, it assessed no damages against DOT Compliance. There was no allegation at the lower court that DOT Compliance was an "alter ego" of Jeff and David Minert. The jury's verdict assessing $20,000 in damages against each Jeff and David Minert for violating the good faith covenant could not be based on the actions of DOT employees, as it is contradictory to the jury's conclusion that DOT Compliance did not cause damages for its breach of the covenant. As discussed above, no other evidence was presented that could support a claim for breach of the good faith covenant against Jeff and David Minert.

We hold that the district court erred in denying Appellants' motion for JNOV on the breach of the covenant of good faith and fair dealing claim against Jeff and David Minert as individuals. Because we hold that the district court erred in denying Appellants' motions for directed verdict and JNOV, we need not address Appellant's arguments challenging the district court's jury instructions on the tortious interference with contract claim or the exclusion of the FBI recording.

### C. The district court's award of attorney fees to DTC Group is vacated.

DTC Group moved in district court for an award of attorney fees under Idaho Code section 12-120(3) and under the settlement agreement. Appellants moved for an award of attorney fees under Idaho Code section 12-120(3) for the breach of contract claim. The district court concluded that DTC Group was the prevailing party in the litigation and awarded DTC Group all of its requested attorney fees ($86,634.32) against Jeff Minert, Dave Minert, and DOT Compliance, jointly and severally.

Because we reverse the district court's judgment in favor of DTC Group, it is no longer a prevailing party on the issues considered below. Therefore, we vacate the district court's award of attorney fees and costs to DTC Group.

### D. We award Jeff and David Minert attorney fees on appeal related to the breach of the covenant of good faith and fair dealing claim.

Appellants seek an award of attorney fees on appeal under Idaho Code section 12-120(3) and under the settlement agreement. DTC Group seeks an award of attorney fees on appeal under

17

section 12-120(3). DTC Group has not have prevailed on appeal and is not entitled to attorney fees. Jeff and David Minert have prevailed on the claim for breach of the covenant of good faith and fair dealing and are entitled to fees under the terms of the settlement agreement.

The claim for tortious interference with contract was not based on the settlement agreement. Therefore, DOT Compliance and Bunnell would not be entitled to fees under the agreement for this claim. Additionally, Section 12-120(3) only allows for an award of attorney fees where the claim is based on a commercial transaction between the parties. *Bryan Trucking Inc. v. Gier*, 160 Idaho 442, 426, 374 P.3d 585, 589 (2016). DTC Group's tortious interference with contract claim was based on the allegation that DOT Compliance and Bunnell interfered with contracts between DTC Group and its customers—not based on a commercial transaction between DOT Compliance, Bunnell, and DTC Group. Therefore, DOT Compliance and Bunnell are not entitled to attorney fees on appeal under Section 12-120(3) for defending against DTC Group's tortious interference with contract claim.

## V.
## CONCLUSION

The judgment of the district court is reversed, including the district court's award of attorney fees to DTC Group. Costs and attorney fees on appeal related to the claim for breach of the covenant of good faith and fair dealing are awarded to Jeff and David Minert.

Justices EISMANN, BURDICK, W. JONES and HORTON CONCUR.