# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44794

DENNIS IRISH and WANDA IRISH, )
husband and wife, )
)
    Plaintiffs-Appellants- )
    Cross Respondents, )
)
v. )
)
JEFFREY HALL and DONA HALL, )
husband and wife, )
)
    Defendants-Respondents- )
    Cross Appellants. )
)

Moscow, April 2018 Term

2018 Opinion No. 42

Filed: April 26. 2018

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge.

The district court's order is vacated and remanded for further proceedings.

James, Vernon & Weeks, PA, Coeur d'Alene, for appellants. Susan P. Weeks argued.

Erik P. Smith, PC, Coeur d'Alene, for respondents. Erik P. Smith argued.

---

BURDICK, Chief Justice.

Dennis and Wanda Irish (collectively, Irishes) appeal the Kootenai County district court's order granting a directed verdict in favor of Jeffrey and Dona Hall (collectively, Halls). The Irishes brought a defamation action against the Halls after the Halls changed their home wireless internet designation to read, "[D]ennis & [W]anda Irish stocking u2." The complaint requested an injunction, damages, attorney fees and costs. This followed an acrimonious history between the parties stemming from Wanda Irish's role as the mayor of the city of Harrison. The district court granted the Halls' motion for a directed verdict, concluding the statement conveyed via the wireless designation was an opinion, and as such was protected under the First Amendment. The Irishes appealed the district court's order, and the Halls cross-appealed, challenging the district

1

court's denial of attorney fees. We vacate the district court's order granting a directed verdict, affirm the denial of attorney fees, and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts and subsequent procedural history were produced at trial. At the time of trial, Wanda Irish had been the mayor of Harrison since 2010. Dennis Irish is her husband. Jeffrey and Dona Hall are the owners of the Gateway Marina in Harrison, and Jeffrey Hall also serves as a member of City Council. This is a defamation case involving a series of statements made by the Halls about the Irishes. At issue is the Halls' changing of their home wireless internet designation to read, "[D]ennis & [W]anda Irish stocking u2."

The tension between the parties has been going on for several years, with most of the disputes centering on Wanda Irish's role as mayor, and the Halls' ownership of the Gateway Marina, with conflict arising over an easement the city has near the marina. The dispute underlying the present case began in May 2012, after the Halls' boat and trailer were towed off of the public easement. Upon discovering his boat had been towed, Jeffrey Hall called Wanda Irish eight times within one hour calling her vulgar names and accusing her of having his boat towed, which Wanda Irish denied doing. Following this incident, Jeffrey Hall placed posters in his vehicle that read, "MAYOR IRISH LIED!!!" and "MAYOR IRISH LIES!!!" Later that year, the Halls found several cameras around town and in the campground near the marina, which were later revealed to belong to Dennis Irish. The Irishes stated the cameras were for security, due to recent graffiti that had been occurring around the city.

In 2013, the Halls reported to the Kootenai County Sheriff's Office that Dennis Irish was stalking Dona Hall. The alleged incident of stalking occurred when Dennis Irish and his business partner drove past Dona Hall when she was standing near the side of a public road. Dennis was subsequently cited for stalking; however, the prosecutor dismissed the stalking charges.

Tensions continued to escalate between the parties, and in 2015, Jeffrey Hall confronted Wanda Irish at her place of employment and accused her of holding secret meetings. Jeffrey Hall also accused Wanda Irish of favoring family members on social media. Following these events, in July 2015, Jeffrey Hall changed the Gateway Marina's wireless internet designation to read, "Mayor Wanda Irish Terrorist." Wanda Irish saw the wireless name on her cell phone, and the Irishes' attorney subsequently sent a cease and desist letter to the Halls. The Halls responded by changing the Gateway Marina's wireless designation to, "she really is a [t]errorist." The Halls

2

then changed their home wireless internet designation to read, "[D]ennis and [W]anda Irish stocking u2." In August 2015, the Halls again changed their home wireless designation to "Move Irish." The Halls admit they made the wireless designations.

In August 2015, the Irishes filed a complaint claiming defamatory slander against the Halls.[1] A three-day jury trial was scheduled, but after the first day at the close of the Irishes' presentation of evidence, the Halls' attorney made a motion for a directed verdict. The district court granted the directed verdict in favor of the Halls, and subsequently entered judgment on December 1, 2016. The district court stated, "defamation is a morass of gray areas. It's very difficult to prove. It kind of reminds me of the Shrek movie when Shrek talks about onions and having layers and you peel back a layer and there's another layer and another layer and another layer." The district court went on to say,

> The next statement, "Dennis and Wanda stocking U2," again, who are they talking about? And then with the misspelling of "stalking," again, we know that what was intended is s-t-a-l-k, stalking, harassing, spying on, or at least I think that's the intent. I think that's a reasonable inference based on the evidence that that was the intent of that name, but it's misspelled s-t-o-c-k-i-n-g, and then there's U2, you, the letter, and 2, the numeral.
>
> For someone who is seeing that for the first time, what does that mean? Does it mean that they're actually stocking U2 albums for sale? Sounds kind of preposterous, but I don't know that it's any more preposterous than another interpretation. And, again, I believe it's an opinion. I don't believe it's subject to something that can be proven or disproven.

The court ultimately granted the Halls' motion for a directed verdict, concluding that the statements made by the Halls about the Irishes were published, but that they were opinions, exaggeration, and hyperbole, and as such not defamatory.

In February 2017, the district court granted the Halls' request for costs, but denied their request for attorney fees, stating the case was not frivolous, unreasonable, or without foundation. The Irishes timely appealed the granting of the directed verdict and the Halls cross-appealed the denial of attorney fees.

---

[1] While the Irishes framed their cause of action broadly as defamation, the actual language used in the complaint was "defamatory slander." However, this case involves libel, as it is written as opposed to spoken. Prosser, *The Law of Torts*, § 93, at 584 (2d ed. 1955). Idaho Rule of Civil Procedure 9 provides that, "[i]n an action for libel or slander it is sufficient to state, generally, the defamatory matter that was published or spoken concerning the plaintiff." I.R.C.P. 9(i). Moreover, Idaho Code section 6-702 states that, "[n]o person shall have more than one (1) cause of action for damages for libel or slander . . . founded upon any single publication or exhibition or utterance . . . . Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." Thus, the Irishes' phrasing of "defamatory slander" as opposed to "defamatory libel" is not of consequence in this action.

## II. ISSUES ON APPEAL

1. Whether the district court erred in granting the Halls' motion for a directed verdict.

2. Whether the district court abused its discretion in denying the Halls' request for attorney fees and whether the Halls are entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

"When reviewing a decision to grant or deny a motion for a directed verdict, this Court applies the same standard the trial court applied when originally ruling on the motion." *Drug Testing Compliance Grp., LLC v. DOT Compliance Serv.*, 161 Idaho 93, 100, 383 P.3d 1263, 1270 (2016) (quoting *April Beguesse, Inc. v. Rammell*, 156 Idaho 500, 508–09, 328 P.3d 480, 488–89 (2014)). Thus, this Court determines,

> whether there was sufficient evidence to justify submitting the claim to the jury, viewing as true all adverse evidence and drawing every legitimate inference in favor of the party opposing the motion for a directed verdict. This test does not require the evidence be uncontradicted, but only that it be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper. Where a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied.

*Id.*

"This Court reviews the denial of attorney fees below for an abuse of discretion." *In re Estate of Wiggins*, 155 Idaho 116, 124, 306 P.3d 201, 209 (2013).

## IV. ANALYSIS

**A. The district court erred in granting the Halls' motion for a directed verdict.**

In granting the Halls' motion for a directed verdict, the district court reached only the first and second elements of the defamation cause of action. The court determined the statement "[D]ennis and [W]anda Irish stocking u2" was published, but that it was an opinion and hyperbole, and as such not defamatory. For the reasons discussed below, the district court correctly determined the statement was published, but it erred in determining the statement was not defamatory. Accordingly, we vacate the district court's order granting a directed verdict in favor of the Halls.

"In a defamation action, a plaintiff must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." *Clark v. The Spokesman-Review*, 144 Idaho 427, 430, 163 P.3d 216, 219 (2007). When a plaintiff is a public figure, "the plaintiff

4

can recover only if he can prove actual malice, knowledge of falsity or reckless disregard of truth, by clear and convincing evidence. *Id.*; *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Actual malice does not refer to evil intent or spite; rather, actual malice includes acting with the "knowledge of falsity or reckless disregard of truth." *Clark*, 144 Idaho at 431, 163 P.3d at 220.

"A defamatory statement is one that 'tend[s] to harm a person's reputation, [usually] by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business.' " *Elliott v. Murdock*, 161 Idaho 281, 287, 385 P.3d 459, 465 (2016) (quoting *Defamatory*, Black's Law Dictionary 506 (10th ed. 2014)). In determining whether an assertion is defamatory, it "must be read and construed as a whole; the words used are to be given their common and usually accepted meaning and are to be read and interpreted as they would be read and understood by the persons to whom they are published." *Gough v. Tribune-Journal Co.*, 75 Idaho 502, 508, 275 P.2d 663, 666 (1954).

Defamatory statements may be defamatory per se, meaning they are actionable without proof of special damages, when they impute "conduct constituting a criminal offense chargeable by indictment or by information either at common law or by statute and of such kind as to involve infamous punishment (death or imprisonment) or moral turpitude conveying the idea of major social disgrace." *Barlow v. Int'l Harvester Co.*, 95 Idaho 881, 890, 522 P.2d 1102, 1111 (1974) (quoting *Cinquanta v. Burdett*, 154 Colo. 37, 39, 388 P.2d 779, 780 (Colo. 1963)). In determining whether a statement is defamatory per se, this Court has stated, "if the language used is plain and unambiguous, it is a question of law for the court to determine whether it is libelous per se, otherwise it is a question of fact for the trier of fact." *Weeks v. M-P Publ'ns, Inc.*, 95 Idaho 634, 636, 516 P.2d 193, 195 (1973) (citing *Bistline v. Eberle*, 88 Idaho 473, 401 P.2d 555 (1965)).

However, not all statements are actionable for defamation. "Statements of opinion enjoy the constitutional protection provided by the First Amendment. But false statements of fact are actionable." *Elliott*, 161 Idaho at 287, 385 P.3d at 465 (citation omitted). As this Court has noted, "[t]he [United States] Supreme Court has distinguished between fact and opinion in the context of the First Amendment protection against liability for defamation" when it stated,

> [w]e begin with the common ground. Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the

5

competition of other ideas. But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust, and wide-open" debate on public issues. They belong to that category of utterances which "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

*Wiemer v. Rankin*, 117 Idaho 566, 571, 790 P.2d 347, 352 (1990) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974) (citations omitted)). Thus, in determining whether a statement is defamatory, "[a]n assertion that cannot be proved false cannot be held libellous [sic]." *Wiemer*, 117 Idaho at 571, 790 P.2d at 352.

      (1) <u>For purposes of the motion for a directed verdict, the wireless designation was published.</u>

First, the Halls argue there is no evidence the wireless statement "[D]ennis and [W]anda Irish stocking u2" was published or communicated to any third person. The element of publication requires the defamatory statement be communicated to a person other than the person defamed. *Clark*, 144 Idaho at 430, 163 P.3d at 219; Restatement (Second) of Torts § 577 (1977). This is because the tort of defamation is based on harm to a person's reputation in the community. Restatement (Second) of Torts § 577 (1977); Prosser, *The Law of Torts*, § 94, at 597 (2d ed. 1955). A review of the record indicates that the district court correctly determined the statement was published by depending on admitted evidence and giving every legitimate inference thereto.

"Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." Restatement (Second) of Torts § 577 (1977). Put another way, "[a]ny act by which the defamatory matter is intentionally or negligently communicated to a third person is a publication." *Id.* "In both print and Internet publishing, information is generally considered 'published' when it is made available to the public." *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1131 (9th Cir. 2006). "Once information has been published on a website or print media, there is no further act required by the publisher to make the information available to the public." *Id*

      It is not necessary . . . that the communication to a third person be intentional. If a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third person, the conduct becomes a negligent communication. A negligent

6

communication amounts to a publication just as effectively as an intentional communication.

Restatement (Second) of Torts § 577 (1977).

Moreover, "[i]t is not necessary that the defamatory matter be communicated to a large or even a substantial group of persons. It is enough that it is communicated to a single individual other than the one defamed." Restatement (Second) of Torts § 577 (1977). In fact, publication can be made to "any third person." Prosser, *The Law of Torts*, § 94, at 597 (2d ed. 1955). A publication can even be made to a member of the plaintiff's family. *Id.* And, "[t]he communication to one spouse of matter defamatory of the other spouse constitutes a publication." Restatement (Second) of Torts § 577 (1977). Thus, a husband and wife can serve as each other's "third parties" for purposes of publication. *Id.*; Prosser, *The Law of Torts*, § 94, at 597 (2d ed. 1955).

In this case, the district court correctly determined the wireless designation "[D]ennis and [W]anda Irish stocking u2" was published. As an initial matter, both Wanda and Dennis Irish testified to having seen the wireless designation "[D]ennis and [W]anda Irish stocking u2." Additionally, Wanda Irish provided a screenshot from her cell phone screen displaying the wireless designation, which was admitted without objection as an exhibit at trial. As noted above, a publication can be made to a member of a plaintiff's family, including the plaintiff's spouse. Prosser, *The Law of Torts*, § 94, at 597 (2d ed. 1955). Here, because both Dennis and Wanda Irish each testified that they saw the statement accusing the other spouse of "stocking," the element of publication was satisfied.

Moreover, there is evidence the wireless designation was seen by other members of the Harrison community. At trial, the Irishes' attorney asked Wanda Irish "[n]ow I want you to talk to the jury about the defendant's wi-fi beacon and how you became aware of that." Wanda Irish responded that she "became aware of the [wireless] beacon by being told about it when I was out in the community." Though the Halls' attorney objected to Wanda Irish's response as hearsay, the objection was overruled and the Halls do not challenge the overruling of the objection on appeal. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("This Court will not search the record on appeal for error. Consequently, to the extent that an assignment of error is not argued and supported in compliance with the I.A.R., it is deemed to be waived."). Because the Halls do not challenge the overruling of the objection, Wanda Irish's statement is admissible and is evidence that other members of the community saw the wireless designation name.

7

In sum, the district court correctly analyzed the issue of publication in the light most favorable to the Irishes, and there was sufficient evidence that a reasonable jury could find the element of publication was met. Thus, the district court did not err when it determined the wireless designation was published.

(2) For purposes of the motion for a directed verdict, the statement "[D]ennis and [W]anda Irish stocking u2" was not an opinion.

Next, the Halls contend the statement, "[D]ennis and [W]anda Irish stocking u2" was an opinion, and thus protected by the First Amendment. As noted, the district court, in granting the directed verdict, stated:

> The next statement, "Dennis and Wanda stocking U2," again, who are they talking about? And then with the misspelling of "stalking," again, we know that what was intended is s-t-a-l-k, stalking, harassing, spying on, or at least I think that's the intent. I think that's a reasonable inference based on the evidence that that was the intent of that name, but it's misspelled s-t-o-c-k-i-n-g, and then there's U2, you, the letter, and 2, the numeral.
>
> For someone who is seeing that for the first time, what does that mean? Does it mean that they're actually stocking U2 albums for sale? Sounds kind of preposterous, but I don't know that it's any more preposterous than another interpretation. And, again, I believe it's an opinion. I don't believe it's subject to something that can be proven or disproven.

As an initial matter, a jury could find the statement "[D]ennis and [W]anda Irish stocking u2" was not an opinion, as it could be proved false. *See Wiemer*, 117 Idaho at 571, 790 P.2d at 352 ("[a]n assertion that cannot be proved false cannot be held libellous [sic]."). In fact, the Halls had previously accused Dennis Irish of stalking Dona Hall, a crime for which Dennis Irish was cited, though the case was later dismissed. As such, the statement that the Irishes were "stalking" people could be proved false, and thus was more than mere opinion.

Additionally, a jury could find that the statement at issue in this case is defamatory per se because it implies that the Irishes are committing the crime of stalking. As noted, a statement may be defamatory per se if it alleges a person has engaged in conduct constituting a criminal offense, when such offense is chargeable by indictment or information and whose punishment includes imprisonment. *Barlow*, 95 Idaho at 890, 522 P.2d at 1111. Stalking is a crime in Idaho, and stalking in the first degree is prosecuted by indictment and information. *See* I.C.R. 7. Moreover, the punishment for stalking includes imprisonment. I.C. §§ 18-7905(4); 18-7906(3). Stalking in the first degree is a felony, and one can be imprisoned for up to five years.  I.C. § 18-

7905(4). Thus, statements that a person has committed the crime of stalking would be defamatory per se. *See Barlow*, 95 Idaho at 890, 522 P.2d at 1111.

Here, while it is true that the Halls spelled the word "stocking" in the wireless designation, as was pointed out by the trial judge, it is not plain or unambiguous what was intended by the word. The trial judge stated, "with the misspelling of 'stalking,' again, we know that what was intended is s-t-a-l-k, stalking, harassing, spying on, or at least I think that's the intent. I think that's a reasonable inference based on the evidence that that was the intent of that name, but it's misspelled s-t-o-c-k-i-n-g. . . ." Thus, the language used is not "plain and unambiguous" and therefore is for the jury to decide if such a statement is defamatory per se. *See Weeks*, 95 Idaho at 636, 516 P.2d at 195 ("if the language used is plain and unambiguous, it is a question of law for the court to determine whether it is libelous per se, otherwise it is a question of fact for the trier of fact.").

Moreover, this Court has stated, "[a] directed verdict is proper only where the evidence is so clear that all reasonable minds could reach only one conclusion: that the moving party should prevail." *Student Loan Fund of Idaho, Inc. v. Duerner*, 131 Idaho 45, 51, 951 P.2d 1272, 1278 (1997) (quoting *Lawton v. City of Pocatello*, 126 Idaho 454, 458, 886 P.2d 330, 334 (1994)). Here, by its own language, the district court conceded that reasonable minds could reach different conclusions when it stated "who are they talking about," "at least I think that's the intent," "what does that mean," and that the district court's interpretation was not "any more preposterous than another interpretation." Thus, the statement "[D]ennis and [W]anda Irish stocking u2" was not "so clear that all reasonable minds could reach only one conclusion" and accordingly should not have been disposed of on a directed verdict. *Duerner*, 131 Idaho at 51, 951 P.2d at 1278 (quoting *Lawton*, 126 Idaho at 458, 886 P.2d at 334). Accordingly, we vacate the district court's granting of a directed verdict.

(3) <u>For purposes of the motion for a directed verdict, the statement "[D]ennis and [W]anda Irish stocking u2" was not political criticism or hyperbole.</u>

Lastly, the Halls contend their statement "[D]ennis and [W]anda Irish stocking u2" was political criticism and hyperbole protected by the First Amendment. This argument is unavailing. Indeed, "[p]olitical epithets and hyperbole leveled against the actions of public officials are within the freedom of expression protected by the First Amendment afforded to citizens criticizing the function of their government." *Weeks*, 95 Idaho at 639, 516 P.2d at 198. Epithet is defined as "a characterizing word or phrase." *Webster's Third New International Dictionary* 765

9

(1971). Thus, a political epithet would be a politically characterized word or phrase. Hyperbole is defined as, "[e]xaggeration, esp[ecially] to an excessive degree; specif[ically], a manner of speaking that depicts something as being much bigger, smaller, worse, etc. than it really is." *Black's Law Dictionary* 860 (10th ed. 2014). Here, as analyzed below, we do not find the statement "[D]ennis and [W]anda Irish stocking u2" to fall within the definition of political epithet nor hyperbole. The statement is not directed at the Mayor in her mayoral capacity or her mayoral duties, and thus is not a politically characterized statement. Nor is the statement a hyperbole that is "depict[ing] something as being much bigger, smaller, worse, etc. than it really is" as the statement only alleges the Irishes are "stocking." *See id.*

In *Weeks* we stated, "[t]he appellants *as public officials* in the *exercise of their official duties* are not immune from the criticism and censure of public debate. The appellants voluntarily entered the arena of public debate and should not complain over ribald or robust criticism of their public action." 95 Idaho at 639, 516 P.2d at 198 (emphasis added). This Court reasoned, "political freedom ends when the government can use the courts to silence, to chill or to dampen the vigor of public debate." *Id.* However, in cases where speech was found to be political criticism, the speech at issue was related to matters of public interest and the reported words did not tend to actually impute one was committing a crime. *Id.* at 638, 516 P.2d at 197 (citing *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970)). For example, in *Bresler*, the local newspaper's characterization of the plaintiff's negotiations as "blackmail" was "rhetorical hyperbole, a vigorous epithet used by those who considered [plaintiff's] negotiating position extremely unreasonable." 398 U.S. at 14. The Court stated, "[n]o reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging [plaintiff] with the commission of a criminal offense." *Id.* Similarly, this Court in *Weeks* held that an editorial opinion in a newspaper article that was titled "Abusive Government" and that called city councilmen "three teeny tyrants" and "three little men" was not libel per se, but rather was obviously political epithet and hyperbole. 95 Idaho at 639, 516 P.2d at 198. The Court stated that, "public officials in the exercise of their official duties are not immune from the criticism and censure of public debate." *Id.*

In this case, the statement "[D]ennis and [W]anda Irish stocking u2" is not political criticism or hyperbole. As an initial matter, the statement was not addressing Mayor Irish's official duties or any official action or comment by the Mayor in fulfillment of her duties. *See id.*

10

Instead, it stated Wanda Irish, along with her husband, were "stocking u2." Moreover, the statement was also directed at Dennis Irish, who is not a public official. Thus, the statement at issue here is unlike that in *Bresler* and *Weeks*. Unlike in *Bresler*, where no reader would have thought the article was accusing the plaintiff of committing a crime, here, a reader of the wireless designation may think the author was accusing Dennis and Wanda Irish of committing the crime of stalking the public in general in addition to stalking the Halls. In fact, Dennis Irish had previously been accused of stalking Dona Hall, and criminal charges had been filed and dismissed. Thus, it is reasonable that a juror may think the statement is alleging that the Irishes are stalking someone. This case is also unlike *Weeks*, where an editorial opinion criticized city councilmen by calling them "tyrants" because here, nothing in the statement is leveled against Wanda Irish in her role as mayor. Instead, the statement here accuses Wanda Irish and her husband of "stocking u2." Thus, this statement is not "[p]olitical epithets and hyperbole leveled against the actions of [a] public official[]" and as such is not defensible on that ground. *Weeks*, 95 Idaho at 639, 516 P.2d at 198.

This Court, in protecting "political epithets and hyperbole" from defamation claims, was concerned about political freedom, self-censorship, and governmental criticism. *See id.* ("the concept of seditious libel lends to self-censorship and strikes at the very heart of democracy. In essence, political freedom ends when the government can use the courts to silence, to chill or to dampen the vigor of public debate."). Those concerns are not implicated by the wireless statement in this case. The statement at issue in this case is not "ribald or robust criticism of [Wanda Irish's] public action." *Id.* Rather, the Halls broadcast an ambiguous wireless internet designation that can be interpreted to accuse Wanda and Dennis Irish of committing the crime of stalking. This allegation is not directed towards Wanda Irish in her role as the mayor, nor is it directed at her official duties. And in any event, Dennis Irish is not a political figure and defamatory statements against Dennis Irish would not be political criticism. Accordingly, we do not consider the wireless designation to be political criticism protected by the First Amendment.

In sum, on a motion for a directed verdict, the district court was required to "draw[] every legitimate inference in favor of the party opposing the motion for a directed verdict." *Drug Testing Compliance Grp., LLC*, 161 Idaho at 100, 383 P.3d at 1270 (quoting *Rammell*, 156 Idaho at 508–09, 328 P.3d at 488–89). And, "[w]here a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be

11

denied." *Id.* Here, the statement "[D]ennis and [W]anda Irish stocking u2" was not "so clear that all reasonable minds could reach only one conclusion" and thus should not have been disposed of on a directed verdict. *Duerner*, 131 Idaho at 51, 951 P.2d at 1278 (quoting *Lawton*, 126 Idaho at 458, 886 P.2d at 334). It was for the jury, rather than the judge, to determine whether the statement "[D]ennis and [W]anda Irish stocking u2" was defamatory as alleged by the Irishes. Thus, we vacate the district court's granting of the Halls' motion for a directed verdict.

**B.      Attorney fees below and on appeal.**

Following entry of the directed verdict, the Halls requested attorney fees under Idaho Code section 12-121 arguing that when a directed verdict is granted, by definition, the suit was unreasonable as reasonable minds could not find for the plaintiff. The district court denied the Halls' request for attorney fees, stating the Irishes' suit was not frivolous, unreasonable, or without foundation. The Halls cross-appealed the district court's denial of attorney fees and argue they are entitled to attorney fees below. However, because we vacate the district court's granting of the directed verdict, attorney fees are improper at this time as there is no prevailing party. *See Bushi v. Sage Health Care, PLLC*, 146 Idaho 764, 771, 203 P.3d 694, 701 (2009) ("Because we vacate the district court's grant of summary judgment and remand for further proceedings . . . [r]espondents can no longer be considered the prevailing party below. Thus, we vacate the district court's award of attorney fees.").

The Halls also request attorney fees on appeal pursuant to Idaho Code section 12-121. This Court, in any civil action, may award reasonable attorney fees to the prevailing party. I.C. § 12-121; *Doe v. Doe (2016-7)*, 161 Idaho 67, 79, 383 P.3d 1237, 1249 (2016). "This Court has held that attorney fees can be awarded on appeal under Idaho Code section 12-121 'only if the appeal was brought or defended frivolously, unreasonably, or without foundation.' " *Id.* (citation omitted). However, "[f]ees will generally not be awarded for arguments that are based on a good faith legal argument." *Easterling v. Kendall*, 159 Idaho 902, 918, 367 P.3d 1214, 1230 (2016). Here again, an award of attorney fees is improper at this juncture as it is not yet clear who the prevailing party will be. *See Bailey v. Peritus I Assets Mgmt.*, *LLC*, 162 Idaho 458, 463, 398 P.3d 191, 196 (2017). Once a final judgment is entered, "we direct the district court to determine which party has prevailed and whether the prevailing party is entitled to attorney fees related to this appeal." *Id.*; *see Wolford v. Montee*, 161 Idaho 432, 444, 387 P.3d 100, 112 (2016).

## V.    CONCLUSION

We vacate the district court's order granting the Halls' motion for a directed verdict, and remand for proceedings consistent with this opinion. No attorney fees at this time on appeal. Costs on appeal to the Irishes.

Justice BEVAN and Justice pro tem, HAYNES, **CONCUR.**

HORTON, J., dissenting.

I respectfully dissent because I do not believe that any reader who happened to see the Halls' home wireless internet designation "dennis & wanda irish stocking u2" could reasonably interpret the statement to constitute a statement of fact. In my view, the inclusion of "u2" is of dispositive significance.

I agree with the Court's conclusion that the phrase "dennis & wanda irish stocking" could reasonably be interpreted as an assertion that the Irishes had engaged or were engaging in stalking, which is criminal conduct and could give rise to a claim of defamation *per se*. However, in my view, the inclusion of "u2" transforms the meaning of the purported assertion to effectively transmit to any reader the message that "Dennis and Wanda Irish are stalking you too."

No viewer of the Halls' home wireless designation could reasonably interpret the assertion that "Dennis and Wanda Irish are stalking you too" as a statement of fact. To do so would require the reader to accept that the message that he or she was the object of criminal activity by the Irishes was intended for him or her alone. Instead, any reasonable reader of the message would understand that this was a statement broadcast to every person who happened to randomly view the Halls' wireless designation and, in the words of the United States Supreme Court, "it is simply impossible to believe" that anyone could accept as factual the assertion that the Irishes were stalking everyone who might happen to view their home wireless designation. In reaching this conclusion, I join the Court in looking to *Bresler* for guidance. There, the United States Supreme Court concluded:

> It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant: it was Bresler's public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense. On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position

13

> extremely unreasonable. Indeed, the record is completely devoid of evidence that anyone in the city of Greenbelt or anywhere else thought Bresler had been charged with a crime.

*Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (footnote omitted). Likewise, I view the Halls' labeling of their wireless designation as "no more than rhetorical hyperbole." I would therefore affirm the district court's grant of the Halls' motion for directed verdict.

Although I would affirm the decision of the district court, I would affirm the district court's decision not to award attorney fees to the Halls pursuant to Idaho Code section 12-121. As the Court's decision reflects, this appeal was far from frivolous.

Justice BRODY concurs.