# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41846-2014

| | | |
|---|---|---|
| MARJORIE LOIS ELLMAKER, a single woman, | ) | Boise, February 2015 Term |
| | ) | |
| Plaintiff-Appellant, | ) | 2015 Opinion No. 21 |
| | ) | |
| v. | ) | Filed: February 26, 2015 |
| | ) | |
| CALVIN TABOR, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendant-Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KEITH TURNER and A1 REAL ESTATE an Idaho Limited Liability Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, in and for Canyon County. Hon. George A. Southworth, District Judge.

The judgment of the district court is <u>affirmed</u>.

Kenneth F. Stringfield, Caldwell, argued for appellant.

David E. Kerrick, Caldwell, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Canyon County from a judgment dismissing the plaintiff's claim seeking to recover the amount owing on a promissory note that the plaintiff inherited, where the decedent's estate was never probated. We affirm the judgment.

## I.
### Factual Background.

Sarah Chitwood was a retired school teacher and a long-time resident of McCall, Idaho. She had a very good friend, Marjorie Ellmaker, who resided in Notus, Idaho. In 2003, Ms. Chitwood contacted an attorney to draft a durable power of attorney, naming Ms. Ellmaker as her attorney-in-fact. Ms. Chitwood executed the power of attorney on August 15, 2003. She later had the attorney draft a will. At that time, Ms. Chitwood was 85 years old and a widow with no living children. On September 5, 2003, she executed the will, which left a cake plate and glass horse to a married couple who were her friends, her cats to another friend, and the remainder of her estate to Ms. Ellmaker.

In 2005, Ms. Chitwood desired to sell part of the real property she owned in McCall. She was introduced to Calvin Tabor, a member in A1 Real Estate LLC which was in the business of flipping houses and buying land to resell. He found a group of investors willing to purchase Ms. Chitwood's property for the sum of $927,000. Ms. Chitwood entered into a written real estate contract dated May 4, 2005, to sell her property to "A1 REAL ESTATE LLC AND/OR AS ASSIGNED."

An addendum to the real estate contract stated that Ms. Chitwood would finance $227,000 of the purchase price by two promissory notes from A1 Real Estate LLC, one for $150,000 and the other for $77,000. The addendum also stated that the notes would be secured by A1 Real Estate LLC and that upon default liens could be placed on the assets of that company.

The original note listed "A1 Real Estate LLC" as the borrower, and Mr. Tabor signed it "as member of A1 Real Estate." The due date on the note was May 1, 2006. In April 2006, the parties agreed to extend the due date to May 1, 2007, and a payment of $9,000 was paid for interest due. The extension of the due date was written on the note, with Mr. Tabor signing "as member of A1 Real Estate LLC" and Ms. Ellmaker signing for Ms. Chitwood pursuant to the power of attorney. In 2007, the parties agreed again to extend the due date on the $150,000 promissory note. A new note dated June 6, 2007, in the amount of $150,000 was issued with a due date on or before December 25, 2007. The borrower was listed as "A1 Real Estate LLC," Mr. Tabor signed it "as member of A1 Real Estate," and Ms. Ellmaker signing it for Ms. Chitwood pursuant to the power of attorney.

On July 25, 2007, Ms. Chitwood died. The attorney who had drafted her will prepared two affidavits of "Non-Probate" for Ms. Ellmaker to sign. In one affidavit dated August 9, 2007,

2

Ms. Ellmaker averred that Ms. Chitwood had died leaving a last will and testament; that Ms. Ellmaker was the sole heir; that all of Ms. Chitwood's debts, the expenses of her last illness, her funeral expenses, and the applicable estate and inheritance taxes had been fully paid; that upon her death Ms. Chitwood owned real property, which was described; and that the affidavit was made for the purpose of transferring the real property to Ms. Ellmaker. A metes-and-bounds legal description of the real property was attached to the affidavit. Ms. Ellmaker recorded that affidavit in the records of the Valley County recorder on August 14, 2007.

In the other affidavit dated July 17, 2013, Ms. Ellmaker averred that Ms. Chitwood had died; that she left a will which was not probated; that Ms. Ellmaker was the sole heir; that all of Ms. Chitwood's debts, the expenses of her last illness, her funeral expenses, and the applicable estate and inheritance taxes had been fully paid; and that the affidavit was made for the purpose of transferring Ms. Chitwood's interest in the real estate contract with A1 Real Estate LLC, the promissory note dated May 9, 2005, and "the Agreement dated 2007" to Ms. Ellmaker. On July 18, 2013, Ms. Ellmaker recorded this affidavit in the records of the Valley County recorder.

On April 21, 2010, Ms. Ellmaker filed this action against Mr. Tabor and A1 Real Estate LLC. She later filed an amended complaint to add as a defendant Keith Turner, the other member of the limited liability company. She alleged that Mr. Tabor breached an oral contract to pay the note and that all defendants breached the implied covenant of good faith and fair dealing, failed to pay the promissory note when due, and had been unjustly enriched. On November 12, 2012, Mr. Turner filed a Chapter 7 bankruptcy petition.

On June 7, 2013, Mr. Tabor filed a motion for summary judgment on the ground that he signed the promissory note as a member of A1 Real Estate LLC and that he is not personally liable on the notes and did not guarantee payment of the note. On the same date, he filed a motion to dismiss on the ground that Ms. Ellmaker lacked standing to bring this action because the estate of Ms. Chitwood had not been probated, no personal representative had been appointed, and the three-year statute of limitations for instituting probate proceedings had expired.

After briefing and argument, the district court granted the motion to dismiss and the motion for summary judgment. The court refused to admit Ms. Chitwood's will into evidence and therefore held that Ms. Ellmaker had no legal basis for enforcing the promissory note. The

court also granted Mr. Tabor's motion for summary judgment on all of the claims asserted against him.

## II.
### Did the District Court Err in Holding that Plaintiff Had No Legal Basis Upon Which to Seek Enforcement of the Promissory Note?

Mr. Tabor moved to dismiss the claim against him on the ground that Ms. Ellmaker was not the real party in interest, that she did not own "the alleged claim," and that she lacked standing. The basis of the motion was that no probate proceedings had ever been instituted for Ms. Chitwood's estate, that there was no written assignment of the promissory note, and that there was no writing by which Tabor guaranteed payment of the note.

In response, Ms. Ellmaker filed the affidavit of the attorney who prepared Ms. Chitwood's will. In his affidavit, the attorney stated:

> I drafted and notarized the Will of Martha Chitwood dated September 5, 2003 wherein other than specific devises, she devised and bequeathed all the rest, residue and remainder of her estate including real property to Marjorie J. Ellmaker. She also named Marjorie J. Ellmaker as the Personal Representative in that Will. There was no reason to believe there was any duress or undue influence in the execution of the Will because she had previously named Marjorie Ellmaker as her Attorney-In -Fact in a general durable power of attorney.

Copies of the power-of-attorney and the will were attached to the attorney's affidavit.

Ms. Ellmaker also filed her affidavit in which she stated that she was present in the room when the attorney and Ms. Chitwood reviewed the will; that the attorney asked Ms. Chitwood if the will was what she wanted, and she responded it was; and that the witnesses then came into the room and the will was signed and notarized. A copy of the power-of-attorney and a copy of Ms. Chitwood's will were also attached to Ms. Ellmaker's affidavit.

In her affidavit, Ms. Ellmaker stated that the two affidavits of "Non-Probate" were "[t]o assist me as personal representative of Martha Chitwood's estate and to transfer the property referred to in the attachments to the affidavits to myself." It was apparent from Ms. Ellmaker's affidavit and deposition testimony that she believed that these affidavits obviated the need for probate proceedings in court.

Idaho Code section Code section 15-3-101 provides, "Upon the death of a person, his separate property devolves to the persons to whom it is devised by his last will . . . ." The word

4

"devolve" means: "1. To transfer (rights, duties, or powers) to another. 2. To pass (rights, duties, or powers) by transmission or succession." Black's Law Dictionary 463 (7th ed. 1999). "The term is said to be peculiarly appropriate to the passing of an estate from a person dying to a person living." Black's Law Dictionary 540 (4th ed. 1968). "The legal title to estate property vests in the heirs or devisees upon the death of the decedent." *Pierce v. Francis*, 194 P.3d 505, 510 (Colo.App. 2008). Thus, upon Ms. Chitwood's death, title to the promissory note passed to Ms. Ellmaker. Because there was no probate of Ms. Chitwood's estate, Ms. Ellmaker could bring an action to recover on the promissory note. The issue is whether the district court erred in excluding the will from evidence.

Idaho Code section 15-3-102 provides that a duly executed and unrevoked will which has not been probated may be admitted as evidence of a devise if (1) no court proceeding concerning the succession or administration of the estate has occurred, and (2) either the devisee or his successors and assigns possessed the property devised in accordance with the provisions of the will, or the property devised was not possessed or claimed by anyone by virtue of the decedent's title during the time period for testacy proceedings. It is undisputed that no court proceeding concerning the succession or administration of Ms. Chitwood's estate has occurred. It is also undisputed that Ms. Ellmaker possessed the promissory note at issue. Thus, the requirements of Idaho Code section 15-3-102 for the admission into evidence of Ms. Chitwood's will were satisfied. In addition, the will was executed, attested, and made self-proved pursuant to Idaho Code section 15-2-504(1). Both witnesses attested under oath that "each of us, in the presence and hearing of the Testator, hereby signs this Will as witness to the Testator's signing and that to the best of his or her knowledge the Testator is eighteen (18) years of age or older, of sound mind, and under no constraint or undue influence."

Mr. Tabor did not object to the admission of Ms. Ellmaker's will into evidence. However, the district court sua sponte decided that the will was not admissible. It relied upon the wording in Idaho Code section 15-3-102 that under the circumstances set forth in the statute, "a duly executed and unrevoked will which has not been probated *may* be admitted as evidence of a devise." (Emphasis added.) The court stated the word "may" was permissive and that it had discretion to decide whether or not to admit the will as evidence. It decided that it would not do so because Ms. Ellmaker "has offered no explanation as to why the will was not probated" and the court "cannot determine if the will submitted is in fact the last will of [Ms. Chitwood] or that

5

the will submitted has not been revoked or replaced by a more recent will." There was no contention that the will was not Ms. Chitwood's will, nor was there any contention that she had revoked the will or executed another will prior to her death.

The district court had discretion to decide whether the will was admissible, even if the issue is not raised by the parties. *Esser Elec. v. Lost River Ballistics Techs., Inc*., 145 Idaho 912, 917, 188 P.3d 854, 859 (2008). In making a determination of whether a trial court abused its discretion, this Court considers: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Rockeller v. Grabow*, 139 Idaho 538, 545, 82 P.3d 450, 457 (2003).

In this case the district court perceived the issue as one of discretion and acted within the boundaries of that discretion. However, it did not do so consistent with the applicable legal standards, and it did not reach its decision excluding the evidence by an exercise of reason. Idaho Code section 15-3-102 does not require an adequate explanation for not commencing timely probate proceedings in order for a will to be admissible under the statute. Although the court stated that it cannot determine whether the will was in fact the last will and testament of Ms. Chitwood, the uncontroverted testimony of both the attorney who drafted the will and of Ms. Ellmaker was that it was. The court cannot simply arbitrarily disregard their testimony. Finally, there was no contention that Ms. Chitwood had either revoked the will or executed a subsequent will. The court cannot refuse to admit the will into evidence merely upon the possibility, unsupported by any evidence at all, that such could have occurred. Therefore, we hold that the district court abused its discretion in refusing to admit the will into evidence.

## III.
### Did the District Court Err in Granting a Summary Judgment Dismissing All of Plaintiff's Claims?

Even though it held that Ms. Chitwood's will was inadmissible, the district court then decided Mr. Tabor's motion for summary judgment as if Ms. Ellmaker could establish a legal basis to pursue her claim. When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v.*

6

*City of Salmon*, 137 Idaho 45, 46-47, 44 P.3d 1100, 1101-02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id.* at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id.*

**A. Breach of an Oral Contract.** Ms. Chitwood entered into a written real estate contract dated May 4, 2005, to sell her property to A1 Real Estate LLC for the sum of $927,000. On the same date, she entered into an addendum to the contract, which stated that "Seller agrees to finance $150,000.00 (one hundred and fifty thousand dollars) of the purchase price through a promissory note with Al Real Estate LLC" and that "Seller agrees to finance $77,000.00 (seventy seven thousand dollars and 00/100's) of the purchase price through a promissory note with A1 Real Estate LLC." A1 Real Estate LLC executed both promissory notes on May 9, 2005. It later paid the $77,000.00 promissory note, but did not pay any principal on the $150,000.00 note.

On June 6, 2007, Ms. Chitwood and A1 Real Estate LLC replaced the $150,000 promissory note with another one in that amount, which was due on or before December 25, 2007. A1 Real Estate LLC and and Ms. Ellmaker, on behalf of Ms. Chitwood, both signed this note. In her amended complaint, Ms. Ellmaker alleged that between October 2007 and July 2009, Mr. Tabor orally agreed that he would pay this note.

Mr. Tabor moved for summary judgment on this claim on the grounds that the parol evidence rule precluded Ms. Ellmaker from asserting that the contract was between Ms. Chitwood and Mr. Tabor and that Mr. Tabor never guaranteed the obligation of A1 Real Estate LLC, nor was there any consideration for such alleged guarantee. The district court agreed that there was no consideration and dismissed this claim.

Idaho Code section 9-505(2) provides that absent a sufficient writing, an agreement is invalid and cannot be received in evidence if it is "[a] special promise to answer for the debt, default or miscarriage of another, except in the cases provided for in section 9-506, Idaho Code." Mr. Tabor argued that the only possibly applicable exceptions under section 9-506 required that Ms. Ellmaker have parted with value in exchange for the alleged promise of Mr. Tabor to pay the debt of A1 Real Estate LLC or that there be consideration beneficial to Mr. Tabor for the

7

promise.[1]  Ms. Ellmaker asserts that "[w]hen Tabor first defaulted, Marjorie did not bring an action because of Tabor's promises to pay, and because his actions were consistent with his words."

"It is well settled in this state that an agreed-to forebearance from suing on a matured contract right is sufficient consideration to support a promise." *Eastern Idaho Production Credit Ass'n v. Placerton, Inc*., 100 Idaho 863, 867, 606 P.2d 967, 971 (1980).  However, there must be a mutual agreement to forebear suing, with either a request to forebear from the debtor or circumstances from which an agreement to forebear can be implied.  *Id*.  There is nothing in the record indicating that Mr. Tabor ever requested forebearance from suit on the June 6, 2007, promissory note.  Likewise, the evidence does not support that Mr. Tabor impliedly agreed to pay the promissory note if Ms. Ellmaker would forebear bringing legal action.

In an affidavit filed in opposition to Mr. Tabor's motion for summary judgment, Ms. Ellmaker asserted that had he told her that the debt was owed by A1 Real Estate LLC rather than himself, she would "have taken legal action sooner."  In her second affidavit, she stated:

> After the 2007 Note issued, Mr. Tabor and I met numerous times where he was working on my home in Notus, because of two floods, and the home I received from Martha in McCall to clean, repair, and plan a remodel, almost every time Mr. Tabor and I met, we discussed the outstanding $150,000 debt; he had many opportunities to tell me that it was A1 Real Estate's debt, not his own and he never did; had he told me that it was Al Real Estate's debt instead of his own, based on his statements when he obtained the loan that it was for him and his partner (not a separate business entity) I would have taken legal action sooner because I would have realized that I had been misled by his representations when he got the loan.

---

[1] The applicable provisions of Idaho Code section 9-506 provide:

> A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing:
>
> . . . .
>
> 2.  Where the creditor parts with value, or enters into an obligation, in consideration of the obligations in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made, his surety.
>
> 3.  Where the promise, being for an antecedent obligation of another, is made . . . upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person.

In her affidavit, Ms. Ellmaker did not assert that her forebearance was in response to any request by Mr. Tabor or agreement with him. Rather, she states she would have taken legal action sooner had he informed her that he was not liable on the promissory note executed by A1 Real Estate LLC.

She also stated in her second affidavit that she sent Mr. Tabor a letter in September 2009. The first two paragraphs of the letter dealt with his failure to respond to her requests that he provide final estimates on repairs to the McCall home that she had inherited from Ms. Chitwood. She then wrote:

> The note of $150,000 that Martha loaned to you in good faith is now severely **passed** due. No interest has been paid since June 2007. As of AUGUST 31, 2009 the Principal of $150,000 and the interest at 6%, ($24.66 per day, $20,096.49) has a balance of $170,096.49 which is due and payable, plus the interest accrued since Sept. 1 until payment date.
> A reply by September 30, 2009 is requested.

Ms. Ellmaker stated that Mr. Tabor did not respond to this letter. His failure to do so cannot reasonably be construed as an agreement to guarantee payment of the note if Ms. Ellmaker agreed to forebear taking legal action. In her verified amended complaint she alleged that on November 5, 2009, she sent a second demand letter to Mr. Tabor, to which he responded by stating that he was not personally liable for the debt. Thus, there is no evidence of an express or implied agreement by Mr. Tabor to pay the obligation of A1 Real Estate LLC if Ms. Ellmaker would delay suing that company.

On appeal, Ms. Ellmaker asserts that Mr. Tabor's alleged oral promise to pay the note was an original obligation that is excluded from the statute of frauds. She relies upon *Dalby v. Kennedy*, 94 Idaho 72, 481 P.2d 30 (1971), which she contends held that "a shareholder who told a creditor of the corporation that he would pay the original corporate account became obligated to pay that account as an original obligation under § 9-506." The *Dalby* case does not support Ms. Ellmaker's claim.

*Dalby* involved a closely held corporation which ceased its operations, after which its two stockholders agreed to divide its assets and liabilities between themselves, with each agreeing to pay specific liabilities. *Id*. at 74, 481 P.2d at 32. One of the stockholders was named Kennedy. The lawsuit involved whether Kennedy was required to pay the corporation's obligation owed to Dalby. At trial, "Dalby testified that he had a conversation with [Kennedy] concerning [the

9

obligation in question], the substance of which conversation was that [Kennedy] agreed he was assuming this obligation personally after he and the other stockholder of [the corporation] had divided the assets and accounts between them." *Id*. at 74, 481 P.2d at 32. Kennedy argued that Idaho Code section 9-505(2) required such an alleged agreement to be in writing. *Id*. The trial court held that the defense based upon that statute was not applicable under the facts of the case. *Id*. On appeal, this Court agreed, stating:

> After Kennedy and his former associate in [the corporation] divided the assets of that corporation and 'split the deal and some of the larger accounts we split,' Kennedy used these assets taken from [the corporation] in his own business. When he later told respondent that he would pay the [corporation's] account, this became his original obligation within the meaning of I.C. § 9-506.

*Id*. at 75, 481 P.2d at 33.

In support of that holding in *Dalby*, this Court cited *Mineau v. Imperial Dredge, Etc. Co.,* 19 Idaho 458, 114 P. 23 (1911). *Id*. In *Mineau,* it was alleged that the Utility Power Company, Ltd., sold all of its property to the defendant corporation, "and that as a consideration therefore the latter company promised and agreed to pay all the outstanding debts and obligations of the former company which included the indebtedness of the Utility Power Company to this plaintiff." 19 Idaho at 460, 114 P. at 24. The plaintiff offered evidence to support the claim, but the trial court granted the defendant's motion for a nonsuit. On appeal, this Court reversed, stating that "there was evidence submitted in the present case tending to show the assumption of liability by the new company which succeeded to the rights of the old company, and that this assumption of liability was an original obligation, or, in other words, was another means of paying its own debt." *Id.* at 462, 114 P. at 24-25.

Thus, in *Mineau,* the assumption of the liability of the other corporation was part of the consideration paid to acquire that corporation's assets. Likewise, in *Dalby,* the assumption of the corporation's liabilities by one stockholder upon the dissolution of the corporation was part of the consideration paid by that stockholder to acquire his share of the corporation's assets. Nothing like that happened in the present case. There is no contention that Tabor agreed to assume the obligation of paying the promissory note as part of the consideration for acquiring assets belonging to A1 Real Estate LLC. The district court did not err in dismissing Ms. Ellmaker's claim for breach of an alleged oral contract.

**B. Breach of the Implied Covenant of Good Faith and Fair Dealing.** Ms. Ellmaker alleges that Mr. Tabor breached the implied covenant of good faith and fair dealing by failing to manage A1 Real Estate LLC "in a manner that demonstrated his good faith towards repaying the loan."

"An implied covenant of good faith and fair dealing adheres to all contracts." *Huyett v. Idaho State University*, 140 Idaho 904, 910, 104 P.3d 946, 952 (2004). A violation of the implied covenant is a breach of contract, and it does not result in a cause of action separate from the breach of contract claims. *Saint Alphonsus Diversified Care, Inc. v. MRI Associates, LLP*, 157 Idaho 106, 120, 334 P.3d 780, 794 (2014). "[B]efore a party can breach this covenant there must be a contract." *Silicon Intern. Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 552, 314 P.3d 593, 607 (2013). Because there was no contract between Mr. Tabor and either Ms. Chitwood or Ms. Ellmaker, he could not be liable for any breach of the implied covenant of good faith and fair dealing.

Ms. Ellmaker contends that we should extend the implied covenant of good faith and fair dealing and hold that a manager of a limited liability company can be liable for failing to exercise "good faith" in making sure that the company paid the promissory note. A member of a limited liability company does not become liable for the debts of the company "solely by reason of the member acting as a member or manager acting as a manager." I.C. § 30-6-304(1)(b).

**C. The Failure to Pay the Promissory Note.** In her amended complaint, Ms. Ellmaker alleged that Mr. Tabor failed to pay the June 6, 2007, promissory note when it came due. She argued that he was liable because he executed the real estate contract and the promissory notes for a partially disclosed principal. The district court granted summary judgment on that claim because "[t]he contract, e.g. the Promissory Note, clearly was entered into between A1 Real Estate LLC and Martha [Chitwood]. It is clear and unambiguous on its face."

"A person making a contract with another as an agent for a disclosed principal does not become a party to the contract." *General Motors Acceptance Corp. v. Turner Ins. Agency, Inc.*, 96 Idaho 691, 696-97, 535 P.2d 664, 669-70 (1975). "An agent gives sufficient notice of his principal's identity when an agent informs the other party of the entity he represents with enough specificity for the other party to actually know it is dealing with the particular entity. This includes specificity as to the company's name and corporate existence." *Agrisource, Inc. v. Johnson*, 156 Idaho 903, 910, 332 P.3d 815, 822 (2014). In this case, the buyer under the real

estate contract was identified as "A1 REAL ESTATE LLC"; the addendum to the real estate contract listed "A1 REAL ESTATE LLC" as the buyer and it stated that Ms. Chitwood would finance $150,000 of the purchase price "through a promissory note with Al Real Estate LLC" and $77,000 of the purchase price "through a promissory note with AI Real Estate LLC"; the promissory note dated May 9, 2005, listed the borrower as "A1 Real Estate LLC," and the replacement promissory note dated June 6, 2007, listed the borrower as "A1 Real Estate LLC." Thus, the principal's identity and the fact that it was a limited liability company were disclosed.

Ms. Ellmaker contends that A1 Real Estate LLC was only a partially disclosed principal because when talking with her and Ms. Chitwood prior to the closing of the transaction, Mr. Tabor did not voluntarily tell them the significance of the designation "LLC," did not explain what a limited liability company was, and did not inform them of the possible risks of loaning money to a limited liability company without obtaining a personal guarantee from the members of the company. There is no evidence that either Mmes. Ellmaker or Chitwood ever asked Mr. Tabor what "LLC" meant or why A1 Real Estate LLC was the party to the transaction rather than Mr. Tabor. Ms. Ellmaker simply contends that the principal was partially disclosed because prior to this lawsuit she had no knowledge of limited liability companies. A member of a limited liability company does not incur liability for failing to explain the law applicable to limited liability companies to someone contracting with the company or to advise them to seek legal counsel before entering into the contract.

**D. Unjust Enrichment.** Ms. Ellmaker contends that Mr. Tabor will be unjustly enriched if he is not required to pay the promissory note executed by A1 Real Estate LLC. She states that "Tabor received, on behalf of A1 [Real Estate LLC], a sum certain of $150,000 as evidenced by the Note." That statement is inaccurate. A1 Real Estate LLC and other investors purchased Ms. Chitwood's real property, and Ms. Chitwood extended credit to A1 Real Estate LLC by accepting the two promissory notes rather than cash to enable it to purchase its interest in the property. She did not loan A1 Real Estate LLC $150,000 in cash.

Ms. Ellmaker then asserts that "Tabor benefitted because he was the able to continue the LLC business, to pay himself and his partner from the company's payroll, and to pay off himself as a creditor of A1 [Real Estate LLC]." In making that assertion, Ms. Ellmaker relied upon the company's 2008 income tax return. The CPA who prepared the return explained what occurred as follows:

During 2008, Calvin Tabor's K-1 shows $52,804 in withdrawals and distributions. Calvin Tabor received $35,754 in cash. The remaining $17,500 in withdrawals and distributions represents $5,416 of in and out money related to loans and repayments recorded in 2008, and $11,634 which represents a charge on a receivable that was not recovered. Management decided not to deduct that charge as an expense on the Al return, but instead recorded it as a charge to the shareholder capital account. This was a conservative approach. In addition, the capital contributed for the year of $104,949 represents the $5,416 of in and out money above, plus $99,543 of A1 liabilities that that [sic] were credited to Calvin's capital account when Al was dissolved. So in effect, Calvin received $35,754 in cash, but his account was credited for $99,543 in liabilities. This leads to a net increase to Calvin of $63,789 in liabilities over assets.

Mr. Tabor testified that the $35,000 in cash he received was "payroll and carryover payroll, which was owed to me but had never been paid from the previous tax years because A1 Real Estate did not have the funds."

A1 Real Estate LLC was administratively dissolved on June 8, 2007, for failing to file an annual report. The Secretary of State had mailed the annual report form to Mr. Turner, who was the registered agent. He had moved and did not receive the form. The company was reinstated August 20, 2007, and such reinstatement related back to the date of dissolution, I.C. § 30-6-706(3). It was administratively dissolved again on June 5, 2008. The annual report form was again mailed to Mr. Turner, and it was undeliverable to the address on record with the Secretary of State. The effect of the administrative dissolution is that the company could not carry on any business except that necessary to wind up and liquidate its business and affairs pursuant to the applicable statutes. I.C. § 30-6-705(4). A1 Real Estate LLC never commenced proceedings to wind up its affairs and liquidate its business. In its order granting summary judgment, the district court stated that it did not have any assets to distribute.

"The elements of unjust enrichment are that (1) a benefit is conferred on the defendant by the plaintiff; (2) the defendant appreciates the benefit; and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit." *Teton Peaks Inv. Co., LLC v. Ohme*, 146 Idaho 394, 398, 195 P.3d 1207, 1211 (2008). Ms. Chitwood extended credit to A1 Real Estate LLC. According to Mr. Tabor: "[T]here was an abrupt down turn in the real estate market and real estate prices plummeted. A1 Real Estate, LLC had at least two real properties in inventory that rapidly became worth less than the mortgages and were ultimately

13

deeded back to lenders in lieu of foreclosure." He also stated, "I lost everything in the real estate down turn and as a contractor have had a very difficult and slow time starting over again."

The main business of A1 Real Estate LLC was flipping houses during what turned out to be a real estate bubble. Ms. Chitwood extended credit to the company to enable it to purchase an interest in the real property she sold. When the bubble burst, the company became insolvent and could not pay its debt to her. There is simply no factual basis for a claim of unjust enrichment against Mr. Tabor as a member-manager of the limited liability company. The district court did not err in granting summary judgment dismissing Ms. Ellmaker's claim for unjust enrichment.

## IV.
### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Both Ms. Ellmaker and Mr. Tabor request an award of attorney fees on appeal. Ms. Ellmaker requests an award of attorney fees pursuant to Idaho Code section 12-120 because this is an action on a note and pursuant to section 12-121. Because she is not the prevailing party on appeal, she is not entitled to an award of attorney fees under either of those statutes. *Cuevas v. Barraza*, 155 Idaho 962, 965, 318 P.3d 952, 955 (2014).

Mr. Tabor seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-120(3) because this is an action to recover on a promissory note. That statute provides, "In any civil action to recover on . . . [a] note . . . , the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." I.C. § 12-120(3). Mr. Tabor is therefore entitled to an award of attorney fees on appeal.

## V.
### Conclusion.

We affirm the judgment of the district court dismissing all claims asserted by Ms. Ellmaker against Mr. Tabor. We award Mr. Tabor costs and attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**

14