IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 50740

| | |
|---|---|
| CASEY MOYER and CAITLIN BOWER, | ) |
| | ) |
|   Plaintiffs-Appellants, | ) |
| | )   **Boise, October 2024 Term** |
| v. | ) |
| | )   **Opinion Filed: December 18, 2024** |
| DOUG LASHER CONSTRUCTION, INC., | ) |
| an Idaho corporation, | )   **Melanie Gagnepain, Clerk** |
| | ) |
|   Defendant-Respondent. | ) |
| _____ | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Derrick J. O'Neill, District Judge.

The decision of the district court is <u>affirmed</u>.

Givens Pursley, LLP, Boise, for Appellants. Donald Z. Gray argued.

David E. Kerrick, Caldwell, for Respondent. David E. Kerrick argued.

_____

BRODY, Justice

Casey Moyer and Caitlin Bower ("Homeowners") challenge a grant of summary judgment in favor of the building contractor based on the applicable statute of limitations. In 2014, Casey Moyer entered into an agreement with Doug Lasher Construction, Inc. ("Lasher Construction") for the construction and purchase of a new home, which was substantially completed that November. Starting in February 2015 and over the next six-and-a-half years, Moyer repeatedly informed Lasher Construction about issues with the home, most notably problems with water leakage, and sought and received assurances from the builder that the issues were fixed or would be fixed. However, the issues persisted, and Homeowners filed suit against Lasher Construction in November 2021.

Homeowners' complaint alleged four causes of action: (1) breach of contract pertaining to the real estate purchase and sale agreement; (2) breach of contract pertaining to what the Homeowners allege are twelve individual promises made by the builder to fix defects since

1

completion of construction; (3) breach of contract pertaining to a letter sent by Lasher Construction in response to a Notice and Opportunity to Repair Act ("NORA") demand; and (4) violation of the Idaho Consumer Protection Act, codified at Idaho Code section 48-601 *et. seq*. The district court granted summary judgment in favor of Lasher Construction, ruling that all claims were time-barred under Idaho Code sections 5-241(b) and 5-216, which provide that a claim arising out of a contract for the construction of real property must be brought within five years of the final completion of that construction. Homeowners appeal the district court's decision. For the reasons expressed below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In April 2014, Casey Moyer entered into an agreement with Lasher Construction whereby Lasher Construction agreed to construct, and Moyer agreed to buy, a single-family residence in Boise, Idaho in exchange for $732,034. Construction on the home began in May 2014, and the home was substantially completed in November 2014. On December 5, 2014, the parties closed on the purchase of the home.

Over the next seven years, Homeowners repeatedly communicated with Lasher Construction, via text messaging, about water leaks and other problems with their home. The problems began when Homeowners noticed that water was leaking through one of the windows on a west facing wall. Moyer informed Lasher Construction of the problem via text message on February 5, 2015, and Lasher Construction responded that it would be there "first thing on [sic] the morning."

Approximately a year-and-a-half later, on July 11, 2016, Moyer again informed Lasher Construction of leaks around the same window in a text message exchange and was informed by Lasher Construction that a "window guy" would be coming by "in the next day to seal it." Six months passed without any additional text communication between Homeowners and Lasher Construction. On January 25, 2017, Moyer notified the builder of issues with the soffit, and Lasher Construction responded it would look later, but that the problem was "ascetic damage[,] not structural."

Homeowners continued to notice water leaks in their home in the spring of 2017. On March 30, 2017, Moyer informed Lasher Construction about "massive leaks in the downstairs[,]" caulking which had pulled away from the house, water damage with the eaves, and a problem with the roof. Lasher Construction again responded that it could look at the issues "in the [morning]."

The following winter, Homeowners again noticed water leaking through the windows and the roof soffit. Moyer communicated with Lasher Construction about the continued problems via text messaging on January 29, 2018, and Lasher Construction responded it would "stop in" in twenty minutes. The window continued to leak that spring, and on April 16, 2018, Moyer informed Lasher Construction that the water leak may be causing damage to the sheet rock**.**

Thereafter, Lasher Construction attempted to fix the leak. On October 11, 2018, Lasher Construction inquired via text message whether its fix did "the trick":

| | |
|---|---|
| Lasher Construction: | Did that leak stop? |
| | Did that pieceof [sic] tin seam to [sic] do the trick for that leak? |
| Moyer: | It seemed to do the trick. What do you think for a more permanent solution….and thank you |
| Lasher Construction: | Duct tape to keep it solid? |
| | I was thinking about measuring it and having our metal place custom build a shield that still allows it to vent but not get wet |
| Moyer: | That would be great |
| | In combination with duct take [sic] of course |
| Lasher Construction: | I do love duct tape |

Approximately seven months later, on May 21, 2019, Moyer contacted Lasher Construction via text, complaining that the office window was still leaking, and the leak was damaging the sheet rock and the paint around the window. Moyer inquired about caulking all the windows as a preventative measure. Lasher Construction responded that a "window man" would be in contact to arrange "putting caulking on your windows for you[.] . . .[H]e's going to figure out something on that one that keeps leaking[.]"

Six months went by, then on December 9, 2019, Moyer again contacted Lasher Construction to complain about significant damage to the home caused by the water leaks:

| | |
|---|---|
| Moyer: | I'm still having significant damage and issues with leaks. The front window and then the vent on the roof. We had talked about some kind of cover for the roof vent. |
| | Is the [sic] some kind of hood that could go over to [the] top of the window to keep water from seeping into the wall? |
| | But the problem seems to be getting worse. |

Lasher Construction:  I think that's a great idea. I will get with you and measure them tomorrow.

Less than two months later, in early February 2020, Moyer notified Lasher Construction of "several leak problems" with water "seeping out the bottom of the walls" and water leaking "down the foundation walls" and the window. Moyer also inquired into the status of the "window hoods" discussed the past December but received no response. In March 2020, Moyer repeated his inquiry, emphasizing the continued damage to the sheet rock.

Lasher Construction responded approximately a month later, after Moyer again complained of continued water leaks, damaged sheet rock, and patching for the garage, that it would try to install the window hood by the end of the week. Moyer also informed Lasher Construction that a garage leak previously identified was not properly fixed.

Over the next year, Moyer communicated with Lasher Construction approximately seven times via text messages regarding continued concerns with the office window, water damage and necessary repairs that had not been performed, and other issues with the home. In March 2021, Moyer texted Lasher Construction to request they talk about "the next steps with this[.]" Lasher Construction responded, "Let me figure out a time and I will get back to you." However, Lasher Construction did not get back to Homeowners.

In early April 2021, Homeowners had their home inspected by Valley Home Inspection LLC, which subsequently provided Homeowners with an inspection report detailing several defects with the home. On April 8, 2021, Homeowners' attorney sent Lasher Construction a demand letter citing NORA, Idaho Code section 6-2501 *et. seq.*, which detailed numerous defects with the home, most notably those caused by water leaks, and demanded prompt remediation. The inspection report was attached to the letter.

Lasher Construction responded to the letter by requesting an opportunity to inspect the home, which was granted. After inspecting the home, Lasher Construction provided an itemized response to the NORA letter, dated July 2, 2021, which disputed some issues and committed to perform some simple repairs, "at no charge to the Moyers."

Later in the summer of 2021, Homeowners, who had not heard from Lasher Construction about a repair schedule, arranged for destructive testing to determine the costs of all repairs identified in the inspection report attached to the NORA letter. Lasher Construction was present during the destructive testing in August 2021.

Homeowners filed suit against Lasher Construction on November 16, 2021. Both parties

subsequently filed motions for summary judgment, with Lasher Construction arguing that all claims were time-barred under the applicable statute of limitations. Homeowners argued that Lasher Construction should be equitably estopped from asserting the statute of limitations defense, and further argued that Lasher Construction's representations and promises to repair made via text messages and its written response to the NORA demand constituted independent contracts that were still enforceable. After reviewing the briefing of the parties and conducting a hearing on the motions, the district court granted summary judgment in favor of Lasher Construction. The district court ruled that Homeowners' claims were time-barred.

In concluding that the statute of limitations had run on each of Homeowners' claims, the district court first explained that, under Idaho Code sections 5-241(b) and 5-216, the time period to bring any cause of action arising out of a contract for the construction of a home was the five-year period that began to run on December 3, 2014, the date the home was substantially completed. Thus, the district court concluded, all breach of contract claims were time-barred after December 3, 2019, unless otherwise tolled. The district court then explained that pursuant to Idaho Code section 48-619—which provides a two-year statute of limitations for causes of action arising under the Idaho Consumer Protection Act—unless tolled, "[a]ny deceptive conduct on the part of [Lasher Construction] prior to November 16, 2019 would be time barred[.]" The district court concluded the lawsuit was brought more than two years after the alleged deceptive conduct occurred, and thus, the Homeowners' cause of action under the Idaho Consumer Protection Act was also time-barred.

The district court then concluded that Homeowners could not assert equitable estoppel as a counter to the statute of limitations defense because they provided no evidence that Lasher Construction prevented them from pursuing the lawsuit until after the statute of limitations had run:

> [Homeowners] have not shown how they were prevented from discovering earlier that [Lasher Construction] had not adequately addressed the problem, nor have [Homeowners] alleged that [Lasher Construction] sought to dissuade them from pursuing their claims during the available four (4) years and two (2) months that remained in the statute of limitations period after discovering the alleged breach around February 5, 2015. *See Knudsen* [*v. Agee*, 128 Idaho 776, 779, 918 P.2d 1221, 1224 (1996)]. The facts show that [Homeowners] had clear knowledge regarding [Lasher Construction's] repairs from the initial discovery around February 2015, at the latest. [Homeowners] also could have discovered that [Lasher Construction's] repairs were not of a standard expected and/or preferred by

[Homeowners] when additional repairs were made around March 2016. At most [Homeowners] have produced only conclusory allegations in their briefing to suggest that [Lasher Construction] strung them along until, *nearly seven (7) years later*, they discovered, through [Lasher Construction's] failure to perform under a subsequent agreement made in response to the NORA letter, that [Lasher Construction] did not intend to further repair previously addressed defects. [Homeowners] have failed to demonstrate that [Lasher Construction] kept them "from pursuing a cause of action during the limitation period." *Knudsen*, 128 Idaho at 779, 918 P.2d at 1224.

The [c]ourt is focused on whether [Lasher Construction] induced [Homeowners] to sit on their rights, which the party bearing the burden— [Homeowners]—have failed to show. Therefore, the [c]ourt finds, as a matter of law, that [Homeowners] have failed to show the existence of a genuine issue of fact under a theory of equitable estoppel that would bar [Lasher Construction] from asserting the statute of limitations defense.

(Emphasis in original; footnote and some internal citations omitted.) The district court also concluded that Homeowners could not rely on the repair doctrine as an alternative to equitable estoppel because this Court rejected the repair doctrine in *J.R. Simplot Co. v. Chemetics International, Inc.*, 126 Idaho 532, 535, 887 P.2d 1039, 1042 (1994) (declining to subscribe to the repair doctrine, which bars a contractor or vendor of faulty goods from utilizing a statute of limitations defense when the owner or purchaser relied on the contractor's or vendor's repairs or promises to repair and "permitted the statute of limitation to expire" (citing *Colorado-Ute Electric Association, Inc. v. Envirotech Corp.*, 524 F. Supp. 1152, 1155–56 (D. Colo. 1981))), *abrogated on other grounds by Day v. State of Idaho, Transportation Department*, 166 Idaho 293, 458 P.3d 162 (2020).

Homeowners timely appealed.

## II.    STANDARDS OF REVIEW

"An appeal from summary judgment is reviewed under the same standard a district court uses when granting a motion for summary judgment." *Pocatello Hosp., LLC v. Quail Ridge Med. Inv., LLC*, 157 Idaho 732, 737, 339 P.3d 1136, 1141 (2014). "[S]ummary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id*. at 737–38, 339 P.3d at 1141–42 (internal quotation marks and citation omitted). "When applying this standard, this Court construes disputed facts 'in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the non-moving party.' " *AED, Inc. v. KDC Invs., LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013)

(quoting *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 394, 224 P.3d 458, 461 (2008)). "If the evidence reveals no disputed issues of material fact, then summary judgment should be granted." *Pocatello Hosp.*, 157 Idaho at 738, 339 P.3d at 1142. To survive summary judgment, the adverse party may not rest on mere allegations within the pleadings but rather must set forth specific facts demonstrating that there is a genuine dispute for trial. *AED, Inc.*, 155 Idaho at 163, 307 P.3d at 180. "Therefore, 'the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists . . . .' " *Id.* (quoting *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005)). "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.* (citation omitted).

## III. ANALYSIS

### A. We reaffirm the holding in *J.R. Simplot Co. v. Chemetics International, Inc.* that the repair doctrine is not available in Idaho.

Under the repair doctrine, a contractor of a defective building or home is barred from utilizing the statute of limitations as a defense when it has discouraged the owner from filing a timely lawsuit by promising "that all defects would be wholly repaired[.]" *J.R. Simplot Co. v. Chemetics Int'l, Inc.*, 126 Idaho 532, 535, 887 P.2d 1039, 1042 (1994), *abrogated on other grounds by Day v. State of Idaho, Transp. Dep't*, 166 Idaho 293, 458 P.3d 162 (2020). Homeowners recognize that this Court rejected the repair doctrine, "either as a version of equitable estoppel or an alternative means of barring or tolling the statute of limitations defense" in *Simplot.*, 126 Idaho at 535, 887 P.2d at 1042. They contend that the unavailability of the repair doctrine leads to injustice because it enables contractors to "lull homeowners into foregoing a lawsuit until the statute of limitations has run," which they argue occurred in their case. For the reasons expressed below, we decline to overrule *Simplot*.

"[T]he rule of stare decisis dictates that we follow [controlling precedent], unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Grease Spot, Inc. v. Harnes*, 148 Idaho 582, 585, 226 P.3d 524, 527 (2010) (alterations in original) (quoting *Reyes v. Kit Mfg. Co.*, 131 Idaho 239, 240, 953 P.2d 989, 990 (1998)). "While the doctrine of stare decisis is an important principle that ensures stability in the law, 'when the judicial interpretation of a statute is manifestly wrong, stare decisis does not require that we continue an

incorrect reading of the statute.' " *Id.* (quoting *Greenough v. Farm Bureau Mut. Ins. Co.*, 142 Idaho 589, 592–93, 130 P.3d 1127, 1130–31 (2006)).

This Court has previously held that the repair doctrine is not available in Idaho, either as a form of equitable estoppel or as an alternative means of tolling the statute of limitations. *Simplot*, 126 Idaho at 535, 887 P.2d at 1042. In *Simplot*, the company contracted with Chemetics to build a plant that would produce 2,000 short tons of sulfuric acid per day. *Id.* at 533, 887 P.2d at 1040. After construction of the plant and performance testing was successfully completed in January 1986, the plant failed to produce the required amount of sulfuric acid on a regular basis. *Id.* Over the next five years, the parties attempted to work together to remedy the issue, but the plant failed to meet the design specifications. *Id.* Simplot filed suit in May 1991, for breach of contract, breach of implied and express warranties, and indemnification for patent infringement. *Id.* The first two claims were filed beyond the five-year statute of limitations. *Id.* Nevertheless, the district court denied a motion for summary judgment, ruling that genuine issues of material fact existed as to whether Chemetics should be estopped from asserting a statute of limitations defense. *Id.*

At the close of the trial, the district court ruled as a matter of law that Simplot had not established the elements of equitable estoppel, and specifically, the element of concealment or false representation. *Id.* at 535, 887 P.2d at 1042. Nonetheless, the district court determined that the repair doctrine, which it concluded is "close to" Idaho's equitable estoppel doctrine, applied and prevented Chemetics from asserting a statute of limitations defense. *Id.* The jury subsequently awarded Simplot over $2.6 million in damages. *Id.* at 534, 887 P.2d at 1041.

On appeal, this Court recognized that other jurisdictions have adopted the repair doctrine to bar "a contractor or vendor of faulty goods who has discouraged the owner or purchaser from filing suit until the applicable statutes of limitation have run from utilizing those statutes as a defense." *Id.* at 535, 887 P.2d at 1042 (citing *Colorado-Ute Elec. Ass'n, Inc. v. Envirotech Corp.*, 524 F. Supp. 1152, 1155–56 (D. Colo. 1981)). This Court explained that those jurisdictions that have adopted the doctrine "usually require a showing that the contractor or vendor insisted to the owner or purchaser that all defects would be wholly repaired or otherwise acted in such a way as to discourage litigation, and that the owner or purchaser relied on the repairs or promises and thereby permitted the statute of limitation to expire." *Id.* This Court declined to subscribe to the doctrine, noting that "the only non-statutory bar to a statute of limitation defense in Idaho is the doctrine of equitable estoppel." *Id.* at 534, 887 P.2d at 1041 (holding that waiver is also a non-

statutory bar to a statute of limitations defense, and equitable estoppel is therefore not the only non-statutory bar to that defense). Accordingly, this Court reversed the jury verdict with respect to the first two claims. *Id*. at 535, 887 P.2d at 1042.

In support of their contention that this Court should overrule *Simplot*, Homeowners argue that "[t]he equitable and policy considerations at issue in the present case were simply not present in *J.R. Simplot*." This contention appears to rest on the premise that equitable estoppel or related principles apply differently to companies than they do to individuals. Homeowners rely on authority from a variety of jurisdictions, including Texas, Minnesota, and Pennsylvania, to support their contention that the repair doctrine should toll the statutory limitations period when a homeowner relied upon a home builder's assurances to repair, or representations that repairs would be made, to the homeowner's detriment. We are not persuaded.

To begin, Texas and Minnesota do not appear to subscribe to a version of the repair doctrine that substantially differs from Idaho's doctrine of equitable estoppel. Homeowners first rely on *Gibson v. John D. Campbell & Co*., 624 S.W.2d 728, 732 (Tex. Ct. App. 1981), to suggest Texas has recognized and applied the doctrine. However, the Texas Court of Appeals did *not* use the phrase "repair doctrine" in *Gibson*; rather, it consistently referred to the question presented as one of equitable estoppel, emphasizing that estoppel required an element of deception on the part of the defendant that caused the plaintiff to forego filing a lawsuit during the time prescribed in the statute of limitations. *Id*. at 733. Idaho's equitable estoppel doctrine also requires deceptive conduct by the defendant that causes a plaintiff to forego filing a lawsuit during the time prescribed by the statute of limitations. *See Simplot*, 126 Idaho at 534–35, 887 P.2d at 1041–42.

Likewise, the phrase "repair doctrine" does not appear anywhere in Homeowners' second cited case, *Rhee v. Golden Home Builders, Inc.*, 617 N.W.2d 618, 622 (Minn. Ct. App. 2000). *Rhee* also addressed whether the district court erred in concluding that equitable estoppel did not bar the home builder from asserting a statute of limitations defense when the home builder had made repeated representations to the homeowners that it did, or would, resolve water leaks. *Id*. at 621–22. Minnesota's equitable estoppel doctrine is nearly identical to Idaho's:

> 1. There must be conduct—acts, language or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped * * *. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the

other party, or under such circumstances that it is both natural and probable that it will be so acted upon * * *. 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse * * *.

*Id*. (alterations in original) (quoting *Lunning v. Land O'Lakes*, 303 N.W.2d 452, 457 (Minn. 1980)).

Idaho's equitable estoppel doctrine condenses these six elements into four, but otherwise retains the same principles:

(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Simplot*, 126 Idaho at 534–35, 887 P.2d at 1041–42 (citations omitted). Accordingly, Homeowners' reliance on Texas and Minnesota authority for the proposition that this Court should adopt the repair doctrine is misplaced.

Pennsylvania, on the other hand, has adopted the repair doctrine; thus, Homeowners' next citation is on point. *Amodeo v. Ryan Homes, Inc*., 595 A.2d 1232, 1238 (Penn. Super. Ct. 1991). Nevertheless, we are not persuaded to depart from principles of stare decisis to adopt Pennsylvania's law. In *Amodeo,* the Pennsylvania court applied both the discovery rule and the repair doctrine to affirm the trial court's conclusion that the homeowners' cause of action against the home builder was not barred by the statute of limitations. *Id*. In adopting the repair doctrine, the Pennsylvania court emphasized that it was "merely applying a specialized form of estoppel, consistent with those other contexts in which we have previously concluded that estoppel applies to toll the running of a limitations period." *Id*. The court explained that the repair doctrine required the "three elements which are the foundation of any estoppel theory [in Pennsylvania]: an act (in this case, the attempted repairs), a representation (in this case, that the repairs would cure the defect), and reliance on the representation." *Id*. Thus, while Pennsylvania's adoption of the repair doctrine was not a departure from its own version of equitable estoppel, it *is* a departure from Idaho's version. Idaho's version of equitable estoppel requires more than just the three elements of an act, a representation, and reliance; it also requires that the representation be *false* (or the concealment of a material fact, when the actor has knowledge of the truth) and "that the party asserting estoppel did not know or could not discover the truth." *See Simplot*, 126 Idaho at 534–

35, 887 P.2d at 1041–42. Accordingly, if the party knew there was *some* problem, or could have discovered the scope of the problem with further investigation or inquiry, estoppel will not apply, even if the party did not actually know the full extent of the problem. Therefore, adopting Pennsylvania's approach to the repair doctrine would result in a marked departure from this Court's past jurisprudence. We are not persuaded such a departure is warranted and decline to overrule *Simplot*.

**B.      The district court did not err in concluding that Homeowners failed to establish all the elements of equitable estoppel.**

Homeowners contend that the district court erred by granting summary judgment on their claim that Lasher Construction should be equitably estopped from asserting the statute of limitations defense. Homeowners argue that the district court erred by resolving issues of fact and "failed to construe all disputed facts and draw all reasonable inferences in their favor," in violation of the summary judgment principles set by this Court in *AED, Inc. v. KDC Investments, LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013) (citing I.R.C.P 56(c)). As explained below, there was no error in the district court's decision.

"Equitable estoppel is available to a plaintiff when the defendants, by their representations or conduct, kept the plaintiff from pursuing a cause of action during the limitation period." *Knudsen v. Agee*, 128 Idaho 776, 779, 918 P.2d 1221, 1224 (1996). It is a "non-statutory bar to a statute of limitations defense." *Simplot.*, 126 Idaho at 534, 887 P.2d at 1041. Application of the doctrine does not "extend" the statute of limitations. *Id*. at 535, 887 P.2d at 1042. "Rather, it prevents a party from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *Id*. (citation omitted). The elements of equitable estoppel are:

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Id*. at 534–35, 887 P.2d at 1041–42.

Here, the district court concluded that Homeowners failed to present genuine issues of material fact pertaining to the second and third elements of equitable estoppel. The district court

acknowledged that Homeowners alleged that Lasher Construction had concealed the true nature and magnitude of the defects from Homeowners:

> To show that [Lasher Construction] should be barred from asserting Idaho Code § 5-216 as a defense, [Homeowners] relied on claims stemming from February 2015 to around March 2021, stating:
>
>> . . . [Lasher Construction] came to [Homeowners'] Home, represented that it would, or did, complete certain repairs, and lulled the [Homeowners] into the belief that a problem had been addressed. By implementing superficial repairs, [Lasher Construction] attempted, and in fact did, conceal the true nature and magnitude of the defects, the [Homeowners] were lulled into believing, to their detriment, that the defects were minor and had been addressed adequately by [Lasher Construction]. In reality, the problems continued to get worse as [Lasher Construction] continued to hide the truth from the [Homeowners].

However, the district court concluded that these statements by Homeowners were conclusory and failed to demonstrate "how [Lasher Construction's] actions and representations caused [Homeowners] to wait and pursue their action until after the applicable statute of limitations had run." The district court rejected the proposition that such statements constituted sufficient facts to demonstrate that they did not know, or could not discover, that Lasher Construction did not or would not adequately address the problems within the applicable statute of limitations period, or that Lasher Construction intended to prevent Homeowners from pursuing their claims during the statute of limitations period. The district court explained that there were multiple points during the seven years between the purchase of the home and the filing of Homeowners' lawsuit at which Homeowners should have been aware that Lasher Construction's repairs were inadequate:

> The facts show that [Homeowners] had clear knowledge regarding [Lasher Construction's] repairs from the initial discovery in February 2015, at the latest. [Homeowners] also could have discovered that [Lasher Construction's] repairs were not of a standard expected and/or preferred by [Homeowners] when additional repairs were made around March 2016. At most, [Homeowners] have produced only conclusory allegations in their briefing to suggest that [Lasher Construction] strung them along until, nearly seven (7) years later, they discovered, through [Lasher Construction's] failure to perform under a subsequent agreement made in response to the NORA letter, that [Lasher Construction] did not intend to further repair previously addressed defects.

(Emphasis and internal citations omitted.)

The district court's grant of summary judgment was correct. While the district court addressed each element of equitable estoppel, we need only look at the third element to rule as a

matter of law that Lasher Construction is not equitably estopped from asserting a statute of limitations defense. There is simply no evidence in the record that suggests that Lasher Construction made false representations or concealed the truth about the condition of the property from Homeowners with the intent to keep Homeowners from making a claim within the statutory period. We agree with the district court that, at best, Homeowners made conclusory arguments in their briefing before the district court and on appeal.

Accordingly, the district court did not err in concluding that Homeowners failed to show a genuine issue of material fact, and that Lasher Construction was entitled to summary judgment as a matter of law, on the equitable estoppel defense.

## C. The district court did not err by dismissing Homeowners' breach of contract claims relating to the alleged text-message promises.

Homeowners contend the district court erred by summarily dismissing their claims for breach of contract pertaining to nine promises to repair they allege Lasher Construction made via text-messaging between January 25, 2017, and October 8, 2020. They argue that the text messages demonstrate that Lasher Construction contracted to repair the defects in the home in exchange for forbearance of Homeowners' lawsuit and these independent contracts are still enforceable under the applicable statute of limitation. We disagree.

"The formation of a contract requires a bargain in which there is manifestation of mutual assent to the exchange and consideration." Restatement (Second) of Contracts § 17 (Am. L. Inst. 1981). "To constitute consideration, a performance of a return promise must be bargained for." Restatement (Second) of Contracts § 71 (Am. L. Inst. 1981). "It is well settled in this state that an agreed-to forbearance from suing on a matured contract right is sufficient consideration to support a promise." *Ellmaker v. Tabor*, 160 Idaho 576, 582, 377 P.3d 390, 396 (2015) (quoting *E. Idaho Prod. Credit Ass'n v. Placerton, Inc.*, 100 Idaho 863, 867, 606 P.2d 967, 971 (1980). "However, there must be a mutual agreement to forebear suing, with either a request to forebear from the [other party] or circumstances from which an agreement to forebear can be implied. *Id.* (citing *E. Idaho Prod. Credit Ass'n*, 100 Idaho at 867, 606 P.2d at 971).

Here, there is nothing in the record establishing a mutual agreement to forbear suing. As explained above, the district court concluded "[Homeowners] have failed to demonstrate that [Lasher Construction] kept them 'from pursuing a cause of action during the limitation period.' " (Quoting *Knudsen*, 128 Idaho at 779, 918 P.2d. at 1224.) We agree with this conclusion. The text messages Homeowners allege constitute twelve individual promises to repair do not indicate that

Lasher Construction ever requested forbearance or agreed to perform any repairs in exchange for Homeowners' forbearance from suit. At best, the text messages establish Lasher Construction made promises to repair as a courtesy. But promises made without corresponding consideration are insufficient to constitute a contract. Accordingly, the district court did not err in dismissing Homeowners' claims for breach of contract pertaining to the text-message promises to repair.

**D.      The district court did not err in dismissing Homeowners' claim for breach of contract arising out of Lasher Construction's July 2, 2021, response to the NORA demand.**

Homeowners contend that the district court erred in dismissing their claim for breach of contract based on the July 2, 2021, letter Lasher Construction sent in response to the NORA demand because the letter constitutes an independent contract still enforceable under the applicable statute of limitations. Homeowners make the same argument in support of this contention as they did with respect to the text-messages promises. They argue the July 2, 2021, response provides a commitment by Lasher Construction to perform certain repairs, in exchange for the Homeowners' consideration that they forbear their right to sue. They contend that the forbearance of their right to sue is evident by the fact the July 2, 2021, letter was sent in response to the NORA demand, which explicitly threatened a lawsuit if repairs were not made. This argument is without merit.

While it is true that the NORA demand threatened a lawsuit if Lasher Construction failed to perform certain repairs, Homeowners did not provide any consideration for any promises made in the July 2, 2021, response letter because they did not send the NORA demand until April 8, 2021, nearly sixteen months after the December 3, 2019, deadline for Homeowners to bring a lawsuit under Idaho Code section 5-216. The district court, at the February 1, 2023, hearing on the motions for summary judgment, questioned whether the statute of limitations had already run on all of Homeowners' claims when the NORA demand was sent and counsel acknowledged that it likely had:

> [District court]: . . . I mean, the NORA letter is sent after the statute would have run. . . . [H]ad the statute already run at the time you sent the NORA letter?
>
> [Homeowners' counsel]: I believe it probably had, yes[.]

Because the statute of limitations had already run when the NORA demand was sent, there was no potential lawsuit for Homeowners to forbear in exchange for Lasher Construction's promises to repair in its July 2, 2021, response. Thus, Homeowners have not demonstrated that they provided consideration to form a contract premised on Lasher Construction's response to the NORA demand. *See* Restatement (Second) of Contracts § 71 (Am. L. Inst. 1981); *see also Ellmaker*, 160

Idaho 576, 377 P.3d 390. Accordingly, the district court did not err in dismissing the Homeowners' claim for breach of contract pertaining to the July 2, 2021, letter sent by Lasher Construction in response to the NORA letter.

**E.      Lasher Construction is entitled to attorney fees on appeal.**

Lasher Construction requests an award of attorney fees and costs as the prevailing party on appeal pursuant to the parties' agreement for the new home construction and purchase of the property. "In any civil action the court may award reasonable attorney fees . . . to the prevailing party or parties . . . when provided for by any statute or contract." I.R.C.P. 54(e)(1). Paragraph 30 of the parties' agreement provides: "if either party initiates or defends any arbitration or legal action or proceedings, which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney fees, including such costs and fees on appeal." This action was connected to the parties' agreement and Lasher Construction is the prevailing party in this action. Accordingly, Lasher Construction is entitled to attorney fees and costs on appeal.

## IV.      CONCLUSION

For the foregoing reasons, the district court's decision is affirmed. Lasher Construction is entitled to attorney fees and costs on appeal pursuant to the parties' agreement and Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.